Ann Marie Paloucci PALLADINO,
Appellant,

v.

Harry PALLADINO, Appellee.

Superior Court of Pennsylvania.

Argued March 11, 1998.
Filed June 30, 1998.

Randee Feldman, Bala Cynwyd, for appellant.

Arthur S. Cavaliere, Philadelphia, for appellee.

Before TAMILIA, ORIE MELVIN and BECK, JJ.

TAMILIA, Judge:

Ann Marie Palladino/wife appeals from the July 17, 1997 Decree divorcing the parties and disposing of the outstanding economic claims.

The parties were married in 1972 and separated 18 years later on October 15, 1990. Their two children are now emancipated. Wife filed a complaint in divorce on August 8, 1990, raising *inter alia* claims for equitable distribution, alimony, counsel fees, costs and expenses. Thereafter, husband's counterclaim for divorce was filed. Following a hearing on the economic issues before a special master, the Master's Report was filed on December 27, 1994. Dissatisfied with the Master's Report and recommendation, each party filed Praecipes for Trial *de novo* on January 4, 1995. Following numerous unsuccessful attempts at reaching a settlement, this case went to trial on January 8, 1997. The parties were divorced and the economic claims were disposed of by the Decree and Order dated July 17, 1997.

Wife appeals from the final decree and raises the following issues for our review.

Whether it was an abuse of discretion for the trial court to determine that a survivor annuity, which derived from a retirement pension, is a marital asset which has value separate from the pension and is subject to equitable distribution?

Whether it was an abuse of discretion for the trial court to accept a pension valuation which was not based on gender-neutral mortality tables?

Whether Wife was severely prejudiced by the trial court's finding that the surviv-

or annuity is subject to equitable distribution, when the Order directing Husband to elect a survivor annuity in order to allow his pension to go into pay status specifically stated that said election was without prejudice to either party's rights in equitable distribution?

Whether it was error for the trial court to fail to include in equitable distribution the amounts received by Husband after his pension went into pay status and prior to equitable distribution?

Whether it was error for the trial court to fail to give Wife full credit for all costs of maintaining and improving the marital residence post-separation?

(Appellant's Brief, p. 5.)

■■■ We review the trial court's final decree subject to the following standard.

We need [to] determine whether the trial court, by misapplication of the law or failure to follow proper legal procedure, abused its discretion. Moreover, "an abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence." Specifically, we measure the circumstances of the case and the conclusions drawn therefrom by the trial court against the provision of 23 Pa.C.S.A. § 3502(a),[1] and the avowed intentions of the Divorce Code, namely to "effectuate economic justice between [the] parties ... and insure a fair and just determination of their property rights."

*Butler v. Butler*, 423 Pa.Super. 530, 537–38, 621 A.2d 659, 663–64 (1993), *modified*, 541 Pa. 364, 663 A.2d 148 (1995) (citations and quotations omitted). Moreover, it is within the trial court's sole province to weigh the evidence presented and assess the credibility of the witnesses. *Calabrese v. Calabrese*, 452 Pa.Super. 497, 501–02, 682 A.2d 393, 395 (1996), *allocatur denied*, 547 Pa. 722, 689 A.2d 230 (1997).

The factual history behind husband's pension and wife's survivor annuity has been well-explained by the trial court and is supported by the record.

Husband was an employee for Horace T. Potts Company. As such, he was a participant in their pension plan, which is the Teamster's multi-employer plan for the Philadelphia vicinity region. The pension plan is a private plan subject to E.R.I.S.A. Mark K. Altschuler, the pension actuary, testified that the plan is a defined benefit plan – defined by a formula. The Teamster's formula is based upon years of service times a multiplier, which is a monthly benefit rate that varies depending on the rate of contribution of the company. Husband's actual entry date into the plan was in 1958, however, because he had a break in service between 1980 and 1984, it was necessary to adjust the credited continuous service. Therefore, the entry date was changed to February 1, 1965. Consequently, he was credited with 25.66667 years of plan service up until the date of separation (October 15, 1990), of which 14.08333 years of plan service accrued during the marriage. He retired on February 1, 1992.

Husband's pension from the Teamster's Union is now in pay status with him receiving a benefit of $976.00 per month, which he will continue to receive until his death. This amount reflects a deduction ("Pension Option # 7") for purposes of a one hundred (100%) percent survivor annuity for Wife's benefit, which Husband was required to elect as a consequence of an Order entered by the Honorable Nicholas Kozay on May 20, 1992. That Order, which was entered pursuant to Husband's Petition for Special Relief, was designed to enable Husband to begin receiving his pension at that time, when he was age 64. The Order required Wife to execute all documents necessary for the pension payments to begin, and, for her protection, further required him to choose a "joint-life pension", which will insure that Wife will receive the same amount as Husband following his death. But for that election, Husband's pension amount would have been $1,058.00 per month. The present value of his pension, without the joint-life election, would be $108,241.00, calculated at an interest rate of 6.48% and using Mortality Table GAM–83. This means

---

1. Equitable division of marital property (a) General Rule.

that Husband was obligated to take a deduction of 7.75% off of what his benefit would have otherwise been for purposes of insuring that Wife receives the same amount as Husband for the rest of her life in the event that he predeceases her. Put another way, what Husband is currently receiving represents 92.25% of what his entitlement would have been but for this mandatory election.... PAC (Pension Analysis Consultants, Inc.) calculated the present value of Husband's pension to be $93,202.00. In order to determine the marital portion of Husband's pension, the present value must be multiplied by a coverture fraction, which is marital service divided by total service. In this case, marital service was 14.08333 years and total service until the cut off date, October 15, 1990, was 25.66667 years. Thus, the applicable coverture fraction in this situation is 54.87%. Therefore, the marital portion of Husband's pension is $51,140.00 ($93,-202.00 × .5487).

(Slip Op., Ivanoski, J., 7/17/97, pp. 13–15.)

 Wife's first argument is the trial court erred in characterizing her survivor annuity as marital property. It is not disputed by the parties that wife is a survivor annuitant due solely to her marriage to husband. The fact the election was made post-separation is of no moment for the benefit was acquired during and pursuant to the marriage. Because the survivor annuity was acquired by wife as the spouse of the employee-pension recipient not subject to any exception, it is, therefore, marital property. 23 Pa.C.S. § 3501, **Definitions**, (a) **General rule.** The survivor annuity is a vested property interest of wife and it is separate and distinct from husband's pension. Just as husband's marital pension benefits are assessed to him, so too are wife's survivor annuity benefits properly assessed to her in the equitable distribution scheme. In the alternative, wife challenges the valuation of her survivor annuity. Wife argues the value of her survivor annuity is equal to the difference between the marital value of husband's retirement benefit prior to the survivor annuity election and the marital value of the present retirement benefit subsequent to the election. Wife's theory is unsupported by

actuarial standards. Pursuant to *Smith v. Smith*, 439 Pa.Super. 283, 653 A.2d 1259 (1995), *appeal denied*, 541 Pa. 641, 663 A.2d 693 (1995), the trial court made its determination of value based upon the evidence presented at trial. The present value of the survivor annuity was calculated at trial by using standard mortality tables and the prevailing interest rates. In calculating the value, the actuary from Pension Analysis Consultants, Inc., utilized the concept of a single premium annuity, which is an annuity purchased today in one payment in order to provide a monthly benefit in the future. Therefore, the cost to purchase a pension of $976.00 per month to start now based upon husband's age and life expectancy, calculated at a 6.48% interest/discount rate and using Mortality Table GAM–83, would be $99,-850.00. Utilizing the same method, the cost to purchase wife's survivorship interest as a single premium annuity would be $57,480.00. Therefore, the value of wife's survivor annuity is $57,480.00.

A joint and survivor annuity such as the one in this case functions much like indemnification insurance in so far as it provides systematically for the payment of definite determinable benefits. If, as wife argues, the value of an insurance policy equaled its cost, obtaining insurance would be wholly unnecessary. The purpose of obtaining insurance is to protect against the prospective financial burdens of losing that which is the subject of the policy by purchasing coverage to compensate for such loss should it occur. As this theory is fully supported by the record, we find no abuse of discretion on the part of the trial court in accepting these figures.

 Appellant next argues if the survivor annuity is found to be marital property and if the present value analysis is used, then gender neutral mortality tables should have been applied in doing the valuation. The standard mortality table used at trial applies different calculations for males than for females. It was the testimony of the actuary that gender neutral mortality tables were not used because it is the standard practice of insurance companies to price the market value of annu-

ities based upon age, health and sex. This evidence was uncontroverted and accepted by the trial court. Moreover, upon examination of the record, we find wife's claim of being improperly precluded from refuting husband's evidence to be without merit.

Wife's attempts to disguise the full value of her survivor annuity fail for two reasons. First, her proffered theories are neither supported by the record nor are they corroborated by any actuarial authority. Secondly, the theories are violative of the avowed intention of the divorce code to insure a fair and just determination of property rights. *Butler, supra.* It should be noted the election of the joint-life annuity option was for wife's benefit only and in light of the fact wife has no other retirement benefits, the survivor annuity should be of an even greater practical value to wife than its actual market value is for equitable distribution purposes.

■ Additionally, wife contends payments received by husband after separation but prior to trial were not properly considered by the court. Examination of the record reveals no evidence these payments were improperly evaluated by the court. Accordingly, we find no abuse of discretion with respect to the post-cut off date payments to husband.

In usual circumstances, in computing the distribution of pension funds for equitable distribution after determining the amount accumulated from the time of the marriage to date of separation, the courts will apply either the immediate offset method, which divides benefits at the time of equitable distribution by assigning present value to the marital portion of the pension, or the deferred distribution method, which requires the court to reserve jurisdiction over benefits as they mature or enter pay status. *Brown v. Brown,* 447 Pa.Super. 424, 669 A.2d 969 (1995), *aff'd,* 547 Pa. 360, 690 A.2d 700 (1997).

In this case, several factors precluded the court from dealing with the husband's pension in a typical fashion as outlined above. The wife is considerably younger than the husband, she has no marital employment record which would provide her with a pension independent from the husband and, because of the limited marital assets available for distribution, to apply the immediate offset method would have resulted in a distribution requiring the sale of the marital home.

Another factor was the entrance into pension pay status of the husband after separation but long before equitable distribution could be effected. In order to permit husband to receive his pension, the pension trustee required that the wife's interest be protected by having her designated an irrevocable survivor's annuitant. Since it was based on actuarial standards applicable to a surviving spouse at the time the annuity went into effect, this requirement resulted in a diminished payment to the husband for the remainder of his life. Upon husband's death, wife receives that payment previously paid to the husband for the remainder of her life. This was an intricate part of the distribution scheme imposed by the court upon weighing all the factors relevant to equitable distribution. This application of the pension fund acquires greater weight and validity in view of the wide disparity between the age of the husband over the wife and the actuarially determined probability that she will survive to obtain the vested survivor's annuity.

Normally, the immediate offset method, determined by the coverture fraction as applied to the value of the pension, is preferred when the pension is vested and in pay status. To do so under these facts, however, was not feasible as such a distribution, as previously described, would have been detrimental to both parties. In what may be construed to be a hybrid deferred distribution of the pension, wherein the value of the pension was fully ascertainable, division was deferred by establishing an irrevocable survivor's annuity for the wife based upon the value of the share of the pension to which she was entitled. In addition, and of substantial independent value, the wife received the benefit of being protected by the survivor's annuity during the separation and pendency of the divorce.

Because the survivor's annuity is in lieu of direct offset distribution and is an attenuated deferred distribution method, it is an acceptable method of pension distribution under the facts of this case. As such, the actuary's

computation of the annuity's value is a valid assessment of its value as marital property in relation to the total amount of the pension accumulated during coverture.

Lastly, wife complains she was denied credit toward equitable distribution for certain improvements she made to the marital residence. Not only does wife fail to explain how these expenses she incurred entitle her to credit upon equitable distribution, but wife fails to make any argument the trial court abused its discretion in concluding the burden of making any such improvement is to be born by wife alone – as recipient of the house in equitable distribution and occupant of the home. *Smith, supra.* Here, the husband at trial made a claim for the fair rental value of the house occupied exclusively by the wife from October 15, 1990 to the date of the hearing on distribution in January 1997. Testimony from a real estate expert established the rental value at $1,000 per month. The court denied fair rental value while also denying the routine expenses for miscellaneous repairs and real estate taxes, thus setting off rental value against the expenses which normally accompany occupation of the home. The one extraordinary expense for roof repair was charged against the husband. We find no error in this determination.

Based upon the foregoing, the July 17, 1997 Decree is affirmed.

Decree affirmed.

BECK, J., concurs in the result.