■ In the Matter of the Estate of ARMENAK AJAMIAN, Deceased. ALICE AJAMIAN, as Administrator of the Estate of ARMENAK AJAMIAN, Deceased, Respondent; ROGER AJAMIAN et al., Appellants, and TROY SAVINGS BANK et al., Respondents. [705 NYS2d 704] —Spain, J. Appeal from an order of the Surrogate's Court of Albany County (Marinelli, S.), entered June 30, 1998, which, *inter alia*, determined that gifts alleged under the Uniform Gifts to Minors Act failed and that funds held in profit sharing retirement accounts were estate assets.

Armenak Ajamian (hereinafter decedent) died intestate in June 1991, a resident of Albany County, survived by four children including a daughter (petitioner) and three sons (Richard Ajamian, Roger Ajamian and Robert Ajamian). In the early 1980s, decedent opened individual accounts for petitioner, Robert and Roger pursuant to the Uniform Gifts to Minors Act (hereinafter UGMA) at respondent Troy Savings Bank (hereinafter TSB) and Pioneer Savings Bank, naming himself as custodian. Thereafter, from time to time decedent transferred funds from these accounts into other UGMA accounts— sometimes in the name of one of his other children—and ultimately, in the two years prior to his death, transferred the proceeds of all of the UGMA accounts to his private accounts.

Decedent also maintained three accounts under a Keogh profit sharing retirement plan (hereinafter the Keogh plan) with TSB. The original beneficiary designation, executed in 1982 for the original account (No. 01-20-24203)—which account alone initially comprised decedent's plan—listed each of decedent's four children as equal beneficiaries. In 1986, in compliance with changes in Internal Revenue Service regulations, TSB sent all of its Keogh plan owners a new beneficiary designation form to be completed an returned. Shortly thereafter, TSB received a completed form bearing decedent's signatures, and an attached carbon copy thereof, naming Roger

and Robert as 50% beneficiaries.[1] At that time decedent had three accounts under the Keogh plan at TSB. An examination of the original and the carbon copy of the 1986 designation form filed with and accepted by TSB reveals that although petitioner and Richard had also been listed as beneficiaries, lines had been drawn through both of their names, as well as their identifying information and their percentage of ownership.

In May 1993, after petitioner was appointed administrator of decedent's estate, she commenced this proceeding seeking, *inter alia*, an order directing TSB to liquidate the three accounts comprising decedent's Keogh plan and pay the proceeds to the estate. Roger and Robert (hereinafter collectively referred to as respondents) answered and cross-claimed against TSB seeking an order directing TSB to pay the Keogh plan proceeds to them pursuant to the 1986 designation. In an amended answer, respondents counterclaimed against petitioner requesting an order directing the estate to pay them amounts equivalent to the proceeds decedent withdrew from the UGMA accounts established in 1984 in their respective names. Richard answered and asserted a cross claim seeking an order directing TSB to pay the proceeds of the Keogh plan accounts to the estate.

Following a bench trial, Surrogate's Court granted the petition and denied respondents' cross claim and counterclaims, ruling that decedent's 1986 Keogh plan beneficiary designation was invalid. The court ordered that the funds in the original Keogh plan account (No. 01-20-24203) be distributed equally among the four children pursuant to decedent's 1982 designation and that the funds in the remaining two Keogh plan accounts created thereafter be paid to the estate. The court also concluded that respondents were not entitled to the proceeds of any of the UGMA accounts established in their names as those gifts failed for lack of donative intent. This appeal by respondents ensued.

Regarding the distribution of the Keogh plan accounts, we find that the 1986 beneficiary designation was sufficient to effect a change of beneficiaries pursuant to EPTL 13-3.2 (e), which requires that such a designation be made in writing and contemporaneously signed by the person making the designa-

---

**1.** Decedent's signatures appear on the form both at the designation signature line and the signature line appearing in the section in which a bank employee acknowledged receipt. TSB's normal procedure concerning receipt of designation forms was to file the original and return the carbon copy to the depositor/owner.

tion (*see,* EPTL 13-3.2 [e]; *Androvette v Treadwell*, 73 NY2d 746, 747). The record indicates that the 1986 designation form which TSB sent to decedent was signed by decedent on October 14, 1986 and its receipt was acknowledged and filed by TSB on the same day. Notably, the carbon copy was in the possession of petitioner's attorney prior to the trial and appears to have been in decedent's possession when he died. The carbon copy was received in evidence at the trial. Both the original held by the TSB and the carbon copy indicate that two of the four beneficiaries originally listed on the form were crossed out, leaving only respondents as equal beneficiaries. Upon examination, the cross out marks on the original and the carbon copy match exactly, thus supporting the conclusion that the changes were made before the original and copy were separated. There is also evidence in the record that petitioner had a falling out with decedent during the period preceding decedent's filing the new designation of beneficiary form with TSB in October 1986. That the form was executed without witnesses and otherwise failed to comply with the formalities accompanying the valid execution of a will is irrelevant, as EPTL 13-3.2 (e) imposes no such requirements (*see, Kane v Union Mut. Life Ins. Co.*, 84 AD2d 148, 151).

On its face the challenged form reflects that decedent filled it out in his own hand, signing and dating it in the proper places. Significantly, no one has disputed these facts nor is there any record evidence to the contrary. Petitioner and Richard speculate that at some point the document was altered by someone other than decedent. They theorize that the changes could have been made after it was completed by decedent and suggest that there is no indication that decedent made the changes. However, the record is devoid of proof that the challenged document is other than what it purports to be. There is no proof that anyone other than decedent crossed out the names before he signed it and submitted it to TSB, no proof that he misunderstood the significance of the document, no proof that he was physically or mentally incapable of changing the document and no proof that TSB's acceptance of the document was in any way irregular. Further, since the date on which the form was filed with TSB in the ordinary course of business, TSB has recognized it as designating respondents to be the equal beneficiaries of the accounts in decedent's Keogh plan. In our view, respondents established their prima facie entitlement to the proceeds of the plan (*see, Green & Co. v William Penn Life Ins. Co.*, 220 AD2d 317) and the petitioner and Richard have wholly failed to prove anything to the contrary.

Moreover, we find that the 1986 designation was sufficient to

effect a change of beneficiaries as to all three accounts comprising decedent's Keogh plan. The 1986 designation form clearly instructed decedent to "Name a Beneficiary or Beneficiaries of the Vested Portion of Your Account Under the Plan." Inasmuch as it is undisputed that there were three accounts comprising decedent's Keogh plan, all three of these accounts came within the scope of decedent's 1986 designation. Accordingly, we reverse that portion of Surrogate's Court order directing that the proceeds of Keogh account No. 01-20-24203 be distributed pursuant to the 1982 designation, and order that the proceeds of that account and account Nos. 01-20-36595 and 01-20-129838 be equally distributed to respondents pursuant to the 1986 designation.

Turning to respondents' counterclaim seeking payment of the funds formerly in the UGMA accounts established in their names, we are guided by the rule that a gift made under the UGMA is irrevocable and conveys to the minor an indefeasible vested legal title (EPTL former 7-4.3, repealed by L 1997, ch 535).[2] As with any irrevocable inter vivos transfer, a gift made under the UGMA will be found valid where there is evidence of delivery and donative intent (*see, Gordon v Gordon*, 70 AD2d 86, 90, *affd* 52 NY2d 773). Here, there is no dispute that the funds decedent used to establish the UGMA accounts were delivered, as the forms executed by decedent to open each account followed the procedures required in the statute (*see*, EPTL former 7-4.2 [c]). Moreover, such properly established UGMA accounts constitute prima facie evidence that a gift was intended (*see, Gordon v Gordon, supra*, at 90-92). This prima facie showing was subject to rebuttal by extrinsic proof that the donor did not possess the requisite intent at the initial establishment of the UGMA accounts because "[t]he essential element of donative intent refers to the grantor's initial intent at the time of the conveyance" (*id.*, at 91; *see, Matter of Leonard v Leonard*, 227 AD2d 624, 625). In our view, petitioner failed to offer sufficient rebuttal evidence on this issue.

Indeed, in rebuttal, petitioner merely submitted documentary evidence reflecting that decedent essentially treated the UGMA accounts as his own. While it is evident that decedent's subsequent transfers from those accounts were made in violation of his fiduciary duty as custodian of the UGMA accounts (*see*, EPTL former 7-4.4), such evidence did not address his

---

**2.** We note that EPTL former 7-4.3 continues to govern pre-December 31, 1996 transfers made pursuant thereto (*see*, Turano, 1996 Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 17B, repealed EPTL 7-4.1 *et seq.*, 1999 Pocket Part, at 42).

motivation at the time he established the UGMA accounts (*compare, Matter of Leonard v Leonard, supra,* at 625). Moreover, given the irrevocable nature of the gifts, decedent's apparent change of intent is immaterial (*see, Gordon v Gordon, supra,* at 93). Likewise, we are not persuaded that decedent's decision to name himself as custodian was indicative of his lack of donative intent as the UGMA expressly permits a donor to serve as custodian (*see,* EPTL former 7-4.1 [f]; *Lippner v Epstein,* 72 AD2d 807, *lv denied* 50 NY2d 805, *appeal dismissed* 50 NY2d 1058).

Thus, we conclude that petitioner did not offer sufficient evidence to demonstrate that at the time the accounts were opened decedent lacked the requisite donative intent to make an irrevocable gift to the child named on each UGMA account, and reverse that part of Surrogate's Court's order finding that the UGMA accounts were invalid for lack of donative intent. Accordingly, we remit the matter to Surrogate's Court for further proceedings regarding the proper distribution of the proceeds formerly comprising these accounts, beginning with, as indicated in the record, the two UGMA accounts established for Robert on May 14, 1981 at TSB (account Nos. 01-20-10232086 and 01-20-10232078). We note that the court should take into consideration, among other factors, decedent's improper management and/or invasion of these irrevocable gifts established under the UGMA and the invalidity of the UGMA accounts established for Robert after his 18th birthday (*see,* EPTL former 7-4.1 [m]).

Mercure, J. P., Crew III, Peters and Mugglin, JJ., concur. Ordered that the order is modified, on the law and the facts, without costs, by reversing so much thereof as (1) found that the Uniform Gifts to Minors Act accounts created under EPTL former 7-4.3 were invalid, and (2) directed that the proceeds of account No. 01-20-24203 be distributed pursuant to the 1982 beneficiary designation executed by Armenak Ajamian and that the proceeds of account Nos. 01-20-36595 and 01-20-129838 be paid to the estate; it is directed that the proceeds of all three numbered accounts be distributed in equal 50% shares to respondents Roger Ajamian and Robert Ajamian, and matter remitted to the Surrogate's Court of Albany County for further proceedings not inconsistent with this Court's decision regarding the proper distribution of the proceeds formerly comprising such Uniform Gifts to Minors Act accounts; and, as so modified, affirmed.