Harold C. STERNLICHT, Appellee,

v.

Lauri Davidson STERNLICHT, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 22, 2002.
Filed March 11, 2003.
Reargument Denied May 21, 2003.

---

Joanne R. Wilder, Pittsburgh, for appellant.

Kerri L. Cappella, Pittsburgh, for appellee.

Before: MUSMANNO, LALLY–GREEN, and KLEIN, JJ.

LALLY–GREEN, J.:

¶ 1 Appellant, Lauri Davidson Sternlicht ("Mother"), appeals from the order dated August 24, 2001, denying Mother's Petition for Accounting and Petition for Removal of Custodian and denying Mother counsel fees. We reverse in part, affirm in part, and remand.

¶ 2 The trial court found the following facts:

Defendant, Lauri Davidson Sternlicht ("Mother"), appeals this Court's Order dated August 24, 2001, denying certain aspects of her Petition for Accounting

and Petition for Removal of Plaintiff, Harold C. Sternlicht ("Father"), as Custodian and for Other Relief. The parties are the natural parents of one minor-child, Jamie K. Sternlicht, born September 12, 1993. They separated in March 1997, and divorced in May 1999.

On August 20, 2001, we held a hearing on Mother's petition. With regard to the issues on appeal only, the testimony and evidence established that in March 1997, an Ameritrade account in the name of Father, Custodian For The Benefit of Jamie K. Sternlicht, UGMA PA, existed with a balance of approximately $4,600. Between October 1997 and December 1998, Father made a series of stock purchases through this account totaling $46,500.[1] The funds to purchase the stocks were generated by Father through post-separation earnings and a $20,000 inheritance he received from his uncle. During the calendar year 1999, Father sold most, if not all, of the stock he had purchased between October 1997 and December 1998. He used the funds to pay the private school tuition expenses of the minor-child and to purchase a home for himself. While Mother suggested at hearing that Father used the funds from the sale of the stock to make payments to her of certain obligations he incurred as the result of our decision on the economic claims of the parties, there was no evidence to support the claim.

Father testified credibly at trial that his sole purpose in making the stock purchases between October 1997 and December 1998 in his name as custodian, was to lessen the tax burden upon himself for capital gains he expected when he sold those stocks. In fact, the evidence established that there were capital gains in excess of $16,000 realized during 1999, and these were then identified on tax filings he made on behalf of the minor-child.

In addition to other relief, which we granted, Mother sought removal of Father as custodian, and that he restore the $59,759 he had removed from the account during the year 1999.

By Order dated August 24, 2001, we granted Mother certain relief, but with reference to the custodial account, we denied the relief requested. This appeal followed.

Trial Court Opinion, 3/6/02, at 1–2.

¶ 3 On January 23, 2001, Mother filed a Petition for Accounting requesting that Father produce records of all transactions relating to a custodial account Father established for daughter under the Pennsylvania Uniform Transfers to Minors Act (PUTMA), 20 Pa.C.S.A. §§ 5301–10.[2] Father produced some documents but did not produce any records demonstrating his use of the custodial funds.

¶ 4 On April 10, 2001, Mother filed a Petition for Removal of Custodian and Other Relief.[3] On July 24, 2001, Mother

---

1. Our review of the record reflects that $36,500.00 was the approximate total in the account for stock purchases of $10,000.00, $20,000.00, and $6,500.00. N.T., 8/20/01, at 44–47.

2. Section 5319 of PUTMA provides for accounting and determination of liability of the custodian and states, in pertinent part:
    (a) Petition.—[A]n adult member of the minor's family... may petition the court for:

(1) an accounting by the custodian or the custodian's legal representative; ...
(d) Court order when custodian removed.—If a custodian is removed under Section 5318(f) (relating to removal for cause), the court shall require an accounting...
20 Pa.C.S.A. § 5319.

3. Section 5318 of PUTMA provides for removal of the custodian for cause and states in pertinent part:

filed a Petition for Enforcement.[4] On August 20, 2001, the trial court held a hearing on Mother's petitions. Father testified as to transactions within the daughter's PUTMA account at the hearing. On August 24, 2001, the trial court entered an order denying Mother's Petition for Removal of Custodian and Other Relief. This appeal followed.

¶ 5 Mother raises two issues on appeal: 1) Did the trial court err in failing to require Father to repay amounts he removed from daughter's custodial account?

2) Did the trial court err [in] failing to require Father to pay Mother's legal expenses incurred in connection with her *Petition for Accounting* and *Petition for Removal of Custodian and for Other Relief?*

Mother's Brief at 4. These issues involve the parties' support of daughter and arose during the course of the parties' equitable distribution dispute that was pending before the trial court.

¶ 6 Our standard of review is well settled.

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of that discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Laws v. Laws,* 758 A.2d 1226, 1228 (Pa.Super.2000) (citations omitted).

¶ 7 Mother first complains that the trial court erred in failing to require Father to repay funds that Father removed from daughter's PUTMA account. Mother complains that all of the money that Father put into daughter's PUTMA account constituted an irrevocable gift to daughter and should be repaid, with interest. The trial court held that Father never intended to gift the funds to daughter when he used the PUTMA account as a depository for stock investments.

¶ 8 We will address Mother's first issue concerning Father's use of the funds in the PUTMA account in two parts. We address: 1) whether the funds Father deposited into the PUTMA account constitute property of the daughter; and 2) whether Father's use of a portion of the funds for two separate expenditures, down payment on a house and payment of daughter's private school tuition, were proper PUTMA expenditures. A proper analysis of

---

(f) Removal for cause.—A transferor, the legal representative of a transferor, *an adult member of the minor's family,* a guardian of the person of the minor, the guardian of the minor or the minor if the minor has attained 14 years of age *may petition the court to remove the custodian for cause . . .*

20 Pa.C.S.A. § 5318 (emphasis added). Mother originally sought removal of Father as custodian of the account but does not argue

that issue on appeal. We, thus, treat the issue of Father's removal as abandoned.

4. Mother's Petition for Enforcement concerned transfer of stock and other equitable distribution matters not on appeal before us. The petition did, however, request attorney fees for Mother. This request for fees was denied in the same August 24, 2001 order presently before us and is an issue on appeal. *See,* Original Record, Docket No. 77.

these issues requires application of several sections of PUTMA.

■ ¶ 9 We first address the issue of whether the funds that Father deposited into the PUTMA account constitute property of the daughter. When the language of a statute is clear and unambiguous, it is not to be disregarded under the pretext of pursuing the spirit of the statute. 1 Pa. C.S.A. § 1921(b); *McKelvey v. McKelvey,* 771 A.2d 63, 64 (Pa.Super.2001). Only when the language of the statute is ambiguous does statutory construction become necessary. *Ramich v. Worker's Comp. Appeal Board (Schatz Electric, Inc.),* 564 Pa.656, 770 A.2d 318 (2001).

■ ¶ 10 The purpose of PUTMA is to provide an inexpensive, easy way for giving property to minors. *Sutliff v. Sutliff,* 515 Pa. 393, 528 A.2d 1318, 1323 (1987). Section 5304 of PUTMA addresses the irrevocable nature of transfers to PUTMA accounts and provides:

> A person may make a transfer by irrevocable gift to, or the irrevocable exercise of a power of appointment in favor of, a custodian for the benefit of a minor pursuant to section 5309 (relating to manner of creating custodial property and effecting transfer).

20 Pa.C.S.A. § 5304. Whatever its source, custodial property that is held pursuant to Section 5304 is the property of the minor child. *Sutliff,* 528 A.2d at 1323.

¶ 11 Section 5309, which addresses the manner of creating custodial property and effecting transfer, provides in relevant part:

> (a) Creation of custodial property.— Custodial property is created and a transfer is made whenever:
>
> . . .
>
> (2) Money is paid or delivered to a broker or financial institution for credit to an account in the name of the transferor, an adult other than the transferor or a trust company, followed in substance by the words: "as custodian for (name of minor) under the Pennsylvania Uniform Transfers to Minors Act."

20 Pa.C.S.A. § 5309. The plain meaning of Section 5309(a)(2) indicates that a transfer is made and "custodial property" is created when money is deposited into a brokerage account in the name of the parent as custodian for the minor under PUTMA.

¶ 12 Section 5311, which addresses the validity and effect of transfer, provides, in pertinent part:

> (b) Irrevocability of transfer. -A transfer made pursuant to section 5309 is irrevocable, and the custodial property is indefeasibly vested in the minor, but the custodian has all the rights, powers, duties and authority provided in this chapter, and neither the minor nor the minor's legal representative has any right, power, duty or authority with respect to the custodial property except as provided in this chapter.

20 Pa.C.S.A. § 5311(b). The plain meaning of Section 5311(b) is that a transfer made into the PUTMA account of the minor is irrevocable and the vesting of the custodial property in the minor cannot be undone.

¶ 13 As the above reflects, the relevant PUTMA provisions are unambiguous on their face and they, therefore, must be given effect in accordance with their plain and common meaning. The plain and common · meaning of the relevant provisions of PUTMA is that money transferred into a custodial brokerage account is irrevocably the property of the minor child.

20 Pa.C.S.A. §§ 5304, 5309, 5311(b).[5]

■ ¶ 14 The trial court determined that the transfer by Father to the PUTMA account did not create property of the child. The trial court addressed this issue as follows:

In reaching our decision on August 24, 2001, we were certainly aware of the irrevocability of gifts made to minors under the Pennsylvania Uniform Gifts to Minors Act, and that such a gift conveyed to the minor indefeasibly vested legal title to the custodial property given. 20 Pa.C.S.A. § 5311(b). Nonetheless, we believed equity demanded a different result in this case. In a very real sense, there never was any donative intent on the part of Father to gift these funds to his daughter. He was not earmarking a sum of money for her future benefit for education or otherwise. He was buying and selling stocks through an Ameritrade account he had opened for her with the sole purpose of limiting his tax liability on the gains. We know from further proceedings involving these parties that Father was not in a financial position to irrevocably commit a sum as large as $46,500 to the future needs of his daughter, when his present financial needs were so substantial.

The tax return verifies that he began withdrawing the funds out of the ac-

count as early as February 1999, and the evidence supports that he used these funds to pay Jamie's private school tuition at the Jewish Community Center of Pittsburgh, though he was otherwise under no obligation to do so. In addition, funds were used to purchase a home for Father so that, in his words, he could enjoy his periods of partial custody with his daughter in an appropriate residence, rather than in the rental property/duplex he had been living in since the time of separation.

Father openly admitted to his ignorance of the provisions of the Pennsylvania Uniform Gift to Minors Act, and it is clear from his testimony that he was merely "parking" these funds in the custodial account for the sole purpose of reducing his tax burden on the capital gains he would realize when the stocks were sold. Father was making the purchases on the Internet through Ameritrade. Father was moving the monies through the Ameritrade account and was not aware of the irrevocability of the gift. We found Father credible on these issues.

20 Pa.C.S.A. § 5309 explains how a person may make a gift under the Uniform Gifts to Minors Act. Clearly the gift becomes irrevocable once made pursuant to 20 Pa.C.S.A. § 5311(b). How-

---

5. We observe that this Court has previously determined that assets transferred to a child by a parent pursuant to the Pennsylvania Uniform Gifts to Minors Act (PUGMA), the predecessor to PUTMA, belong to the child as a result of a completed gift and vest the child with full and indefeasible title. See, Perlberger v. Perlberger, 426 Pa.Super. 245, 626 A.2d 1186, 1201 (1993), appeal denied, 536 Pa. 628, 637 A.2d 289 (1993). Perlberger involved a support action in which Mother used PUGMA funds to pay for certain expenses. Mother alleged the trial court erred in ordering her to restore money to the children's PUGMA account because the funds were used for the

benefit of the children. Id. at 1202. In Perlberger, this Court construed Section 5305 of PUGMA and concluded that property transferred under PUGMA is owned by the minor who becomes vested with full and indefeasible title and that such property is to be used for the benefit of the child. We, thus, vacated the trial court's order requiring reimbursement and remanded for a hearing on whether the use of PUGMA funds was proper. Former Section 5305, relating to the duties and powers of custodians, which we construed in Perlberger, was repealed on December 16, 1992. This repeal does not affect our analysis as we cite Perlberger for relevance, not precedence.

ever, we believe that Father never intended to make an irrevocable [gift] to his daughter. As discussed *supra,* Father was ignorant of the nature of his gift to daughter and that it was irrevocable.

We find support for this position in estate cases where in reviewing whether a decedent intends to make an *inter vivos* gift, the Court requires evidence of both the existence of delivery and donative intent. To establish a valid *inter vivos* gift, the claimant must do so by clear, precise, direct and convincing evidence. To constitute a gift *inter vivos* there must be shown an intention to make an immediate gift and constructive delivery to the donee.

In the case *sub judice,* Father's name was listed as custodian on the account. Father believed he was the owner of the account, or at a minimum that he was a joint owner on the account as he could exercise control over the monies deposited into the account. Also he did not intend for monies to be given to his daughter. Therefore, no valid gift was made.

Trial Court Opinion, 3/6/02, at 2–5 (citations omitted).

¶ 15 Our review of the record reflects that Father established an Ameritrade investment account under PUTMA on behalf of daughter. N.T., 8/20/01, at 42–43. Father testified that the balance of the PUTMA account of $5,667.05 in March of 1997 was intended to be gifted to his daughter. N.T., 8/20/01, at 42–44.

¶ 16 In July of 1997, Father deposited $10,000.00 into the account for the purchase of stock. *Id.* at 46, 528 A.2d 1318. In October of 1997, Father deposited approximately $6,500.00 for the purchase of stock. *Id.* at 45, 528 A.2d 1318. In Feb-

ruary/March of 1998, Father deposited an additional $20,000.00 into the account for the purchase of stock. *Id.* at 46, 528 A.2d 1318. In total, Father deposited over $36,500.00 into the PUTMA account from March of 1997 through December of 1998. *Id.* at 47, 528 A.2d 1318. Father testified that he made the post-March 1997 deposits into his daughter's PUTMA account and subsequent stock purchases for favorable tax treatment. *Id.* at 47, 528 A.2d 1318. Father testified that he did not intend to gift the stock or proceeds to daughter. *Id.*

¶ 17 In 1999, Father liquidated several of the investments in the PUTMA account to pay his daughter's tuition and to make a down payment on a house. N.T., 8/20/01, at 48. The funds from the 1999 sales of stock totaled $59,759.00, representing the cost basis of the stock purchased and $16,616.00 in gains. *See,* 1999 Tax Return, Pa Schedule D.

¶ 18 The trial court found that Father never intended to gift the $36,500.00 into the PUTMA account from March of 1997 through December of 1998. Trial Court Opinion, 3/6/02, at 4. The trial court concluded that Father was ignorant of the law and used the PUTMA account to reduce his income tax liability by attributing the funds to daughter. *Id.*

¶ 19 We are constrained to disagree with the learned trial court. Here, Father established an Ameritrade investment account under Section 5309(a)(2) of PUTMA on behalf of his daughter. The funds deposited into this account became the property of his daughter. 20 Pa.C.S.A. §§ 5304, 5309, 5311(b); *Sutliff.* Father's intention to avoid tax consequences by depositing the funds into the PUTMA account and Father's lack of donative intent as to the funds from the stock sales are of no moment under the principles of PUT-

MA.[6] The learned trial court, thus, erred in determining that the funds deposited into the PUTMA account are not the property of his daughter.

■ ¶20 We next address whether Father's expenditures from the PUTMA account for the purchase of a home and payment of daughter's private school tuition were for the benefit of daughter. We first address Father's expenditure of money from the PUTMA account for the purchase of a home. It is the custodian's duty to use the PUTMA account for the child's benefit. *Sutliff,* 528 A.2d at 1323. A custodian may not use PUTMA property to benefit himself. *Id.* A parent-custodian who uses custodial PUTMA funds to satisfy his own support obligation violates his duty of loyalty. *Id.*

¶21 Again, when the language of a statute is clear and unambiguous, it is not to be disregarded under the pretext of pursuing the spirit of the statute. 1 Pa.C.S.A. § 1921(b); *McKelvey,* 771 A.2d at 64. Only when the language of the statute is ambiguous does statutory construction become necessary. *Ramich,* 564 Pa. 656, 770 A.2d 318.

¶22 Section 5314, use of custodial property, provides:

(a) *Without court order.* -A custodian may deliver or pay to the minor or expend for the minor's benefit so much of the custodial property as the custodian considers advisable for the use and benefit of the minor, without court order and without regard to:

(1) the duty or ability of the custodian personally or of any other person to support the minor; or

(2) any other income or property of the minor which may be applicable or available for that purpose.

(b) *With court order.* -On petition of an interested person or the minor if the minor has attained 14 years of age, the court may order the custodian to deliver or pay to the minor or expend for the minor's benefit so much of the custodial property as the court considers advisable for the use and benefit of the minor.

(c) *Obligation of support not affected.* - A delivery, payment or expenditure under this section is in addition to, not in substitution for, and does not affect any obligation of a person to support the minor.

20 Pa.C.S.A. § 5314(a), (b), (c).

■ ¶23 The relevant provision is unambiguous on its face and, thus, must be given its plain meaning. Under Section 5314, the custodian may expend for the minor's benefit so much of the custodial property as the custodian considers advisable for the use and benefit of the minor. Section 5314 also provides that an expenditure under this section is in addition to, and not in substitution for, any parental support obligation. *Sutliff.*

¶24 Our review of the record reflects that Father used a little over $40,000.00 of the proceeds in the PUTMA account to purchase a new home. N.T., 8/20/01, at 48, 51. Father testified that the house is titled in Father's name alone. *Id.* at 51, 528 A.2d 1318. The record fails to support a conclusion that the expenditure for the home was for the use and benefit of the daughter. Thus, Father failed to comply with the mandate of Section 5314 of PUTMA.

---

**6.** We also note that ignorance of the law is no excuse. *Clem's Café Liquor License Case (Appeal of Dapra),* 425 Pa.94, 227 A.2d 491, 493 (1967) (ignorance of the fact of things contemplated by the statute will not excuse its violation). Father's ignorance of the fact that money deposited into a PUTMA account becomes property of the minor does not excuse Father's failure to comply with PUTMA.

■ ¶ 25 We now address Father's use of a portion of the PUTMA account to pay daughter's private school tuition. Again, an expenditure under Section 5314 is in addition to, and not in substitution for, any parental support obligation. 20 Pa.C.S.A. § 5314; *Sutliff.* A custodian abuses his discretion and acts improperly if he expends funds from a PUTMA account for the purpose of fulfilling his support obligation in lieu of making the payments out of his own income and assets, where the parent has sufficient financial means to discharge it himself. *Sutliff,* 528 A.2d at 1324. PUTMA accounts may not be used for support before the parents expend their own resources. *Mackalica v. Mackalica,* 716 A.2d 653, 657 (Pa.Super.1998); *Litmans v. Litmans,* 449 Pa.Super. 209, 673 A.2d 382, 396 (1996).

¶ 26 Our review of the record reflects that Father used a portion of the PUTMA account to pay daughter's private school tuition. N.T., 8/20/01, at 48. The amount paid for tuition was $7,300.00. *Id.* at 51, 673 A.2d 382. Father acknowledged that he was obligated to pay the school tuition pursuant to the equitable distribution order. *Id.* Our review of the record, thus, reflects that Father used funds from daughter's PUTMA account for the purpose of fulfilling his support obligation in lieu of making the payments out of his own income and assets. Father, thus, failed to comply with the mandate of Section 5314 of PUTMA.

¶ 27 The record, however, fails to reveal whether an inquiry was made as to whether Father had sufficient independent means to discharge the tuition obligation without use of the PUTMA account. We, thus, remand for a determination by the trial court as to Father's present ability to fulfill this support obligation. *Sutliff,* 528 A.2d at 1324.[7]

■ ¶ 28 Mother next complains that the trial court erred in failing to require Father to pay Mother's legal expenses incurred in connection with her Petition for Accounting and Petition for Removal of Custodian and for Other Relief. The general rule is that the parties to litigation are responsible for their own counsel fees and costs unless otherwise provided by statutory authority, agreement of parties, or some other recognized exception. *Cher–Rob, Inc. v. Art Monument Co.,* 406 Pa.Super. 330, 594 A.2d 362, 363 (1991). We review a court's award of, or refusal to award, counsel fees for an abuse of discretion. *Miller v. Miller,* 744 A.2d 778, 790–791 (Pa.Super.1999).

¶ 29 Section 2503(7) of the Judicial Code, 42 Pa.C.S.A. § 2503(7), right to receive counsel fees, provides:

> The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:
>
> (7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter.

42 Pa.C.S.A. § 2503(7).

■ ¶ 30 Section 2503(7) applies to the conduct of a party in commencing a proceeding or conduct during the pendency of an action. *Cher–Rob, Inc.,* 594 A.2d at 364. Section 2503(7), however, does not cover pre-litigation conduct of the parties. *Id. See also, Pentek, Inc. v. Meininger,* 695

---

7. On remand, the trial court is to fashion an appropriate remedy for the repayment of funds that were removed from the PUTMA account and applied to the purchase of the home. Also, if it is determined, on remand, that Father has sufficient means to discharge the tuition obligation, the trial court is also to fashion an appropriate remedy for repayment of the $7,300.00 amount paid for tuition. *Sutliff.*

A.2d 812 (Pa.Super.1997) (Section 2503 does not apply to conduct that occurred prior to the commencement of the suit).

¶ 31 Mother relies upon Section 2503(7) of the Judicial Code and complains that an award of counsel fees is warranted as a sanction against Father "for bad faith conduct during the pendency of the matter." Mother's Brief at 10. Mother complains that Father acted in bad faith by exercising custodial power over the PUTMA account for his own benefit and by failing to maintain records of all transactions regarding the custodial property.

¶ 32 *Our review of the record reflects that Mother fails to allege how Father engaged in bad faith during the pendency of the matter involving Mother's Petition for Accounting and Petition for Removal of Custodian.* Because no allegations of bad faith pertain to the conduct of Father in commencing a proceeding or during the pendency of an action, Section 2503(7) does not apply. The trial court, thus, did not abuse its discretion in denying counsel fees to Mother. *Cher–Rob, Inc.; Pentek.* Appellant's claim fails.[8]

■ ¶ 33 Order affirmed in part and reversed in part.[9] Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

¶ 34 Judge KLEIN files a Dissenting Opinion.

KLEIN, J., Dissenting:

¶ 1 I respectfully dissent.

¶ 2 Although the majority correctly recognizes that a transfer to a minor within the Pennsylvania Uniform Transfer to Minors Act[10] ("PUTMA")[11] is irrevocable, the majority concludes that evidence showing that assets were deposited into a PUTMA account conclusively establishes that a

---

8. Moreover, even if Section 2503(7) did apply, Mother's claim lacks merit. It is within the sole province of the trial court to weigh the evidence presented and assess the credibility of the witnesses. *Palladino v. Palladino,* 713 A.2d 676, 678 (Pa.Super.1998). On appeal, this Court will not disturb the trial court's assessment of either the husband's or the wife's credibility. *Brotzman–Smith v. Smith,* 437 Pa.Super. 509, 650 A.2d 471, 474 (1994).

Here, the trial court found: "we did not believe Father's actions were carried out in bad faith. . ." Trial Court Opinion, 3/6/02, at 4. The trial court specifically addressed Father's movement of monies through the Ameritrade account into the PUTMA account and "found Father credible on these issues." Trial Court Opinion, 3/6/02, at 3. As the trial court found Father credible, and the record supports this determination, we would not disturb the trial court's credibility determination. *Brotzman–Smith.* Likewise, we would not disturb the trial court's conclusion that since Father failed to act in bad faith, no counsel fees were to be awarded under § 2503(7).

9. In the dissent, our learned colleague advocates adopting the principle followed by other state courts that evidence of a transfer into a custodial account raises a rebuttable presumption that a transfer was intended. While the pronouncements of courts in sister states may be persuasive authority, those pronouncements are not binding on this Court. *Commercial National Bank v. Seubert & Assocs.,* 807 A.2d 297, 303 (Pa.Super.2002).

10. 20 Pa.C.S.A. § 5301–5320.

11. In 1992, the General Assembly repealed the Pennsylvania Uniform Gifts to Minors Act ("PUGMA") and adopted the revised uniform act, now called the Pennsylvania Uniform Transfers to Minors Act. *See* Act 1992, Dec. 16, P.L. 1163, No. 152, § 10 (repealer); *see also* 20 Pa.C.S.A. § 5301 (West Supp.2002) (short title and definitions). The revisions were effective immediately. Barring limited exceptions, the repealing act provided that transfers made under the repealed act would be governed by the new act. *See* Act 1992, Dec. 16, P.L. 1163, No 152, § 26(c). Under this provision, regardless of when the transfer was made, we apply the current act, the PUTMA.

"transfer" within the meaning of the Act has been made. However, that view ignores the question of whether a transfer was ever intended and diverges from other states' interpretation of the uniform act. I therefore must disagree.

¶ 3 The "transfer" the PUTMA refers to is essentially a gift.[12] Section 5301 conclusorily defines a "transfer" as "a transaction that creates custodial property under section 5309 (relating to manner of creating custodial property and effecting transfer)." 20 Pa.C.S.A. § 5301. Section 5309 in turn sets forth methods of denominating property as being held in custody for a minor. *See* 20 Pa.C.S.A. § 5309.

¶ 4 Rather than setting forth all that needs to be shown to establish that a minor was given assets as a gift, section 5309 merely regulates the delivery of the gift when it is placed in a custodial account. Pennsylvania common law has long held that the irreducible elements of an *inter vivos* gift are intent plus delivery. *See Hera v. McCormick*, 425 Pa.Super. 432, 625 A.2d 682, 686 (1993); *In re Chapple's Estate*, 332 Pa. 168, 2 A.2d 719, 720 (1938); *Reese v. Philadelphia Trust, Safe Deposit & Ins. Co.*, 218 Pa. 150, 67 A. 124, 126 (1907); *Lyon v. Marclay*, 1 Watts 271, 1832 WL 3063, at *3 (Pa.1832). Under the common law, once the putative donee establishes *prima facie* that he or she received an *inter vivos* gift, the burden shifts to the putative donor to prove by clear and convincing evidence that the transfer was not an *inter vivos* gift. *See Lanning v. West*, 803 A.2d 753, 765 (Pa.Super.2002); *see also Lochinger v. Hanlon*, 348 Pa. 29, 33 A.2d 1, 3–4 (1943).

¶ 5 I cannot agree that the General Assembly intended to create a sort of strict liability and eliminate the common law requirement that the transferor must have actually intended to give a gift. Admittedly, the maxim that "statutes in derogation of the common law are to be narrowly construed" does not, strictly speaking, apply here because the Statutory Construction Act only applies it to statutes that came into force before 1937. 1 Pa.C.S.A. § 1928(a); *see also Commonwealth v. Chiappini*, 566 Pa. 507, 782 A.2d 490, 492 (2001).

¶ 6 But the Statutory Construction Act does not end there. It continues on to say that "[a]ll other provisions of a statute shall be liberally construed to effect their objects and to promote justice." 1 Pa. C.S.A. § 1928(c).

¶ 7 Eliminating the intent requirement for a PUTMA transfer is patently unfair. This is so because no one would expect that if one did not intend to give something to another, the holder would get to keep the property.[13] Perhaps even more so than in other areas of the law, it is imperative that the law of property generally follow average individuals' reasonable expectations. Otherwise, the law loses its mooring in social realities and, in direct proportion, its authority.

¶ 8 Moreover, decisional law interpreting the PUTMA retains both the common law requirement of intent and even employs a similar burden-shifting analysis. Although I have found no Pennsylvania case controlling this issue,[14] other states uniformly hold that evidence of a transfer into a custodial account simply raises a rebutta-

---

**12.** When the Uniform Transfers to Minors Act ("the UTMA") was proposed, "gift" was changed to "transfer" in both the name and terminology of the statute to avoid confusion with the prior uniform law and to reflect the broader permissible sources of assets. Uni-

form Transfers to Minors Act, Prefatory Note, 8C U.L.A. at 3 (2001).

**13.** This notion is reflected in both the tort of conversion and the crime of theft.

**14.** The majority points out that we have previously stated, "Assets transferred to a child by

ble presumption that a transfer was intended.[15] Of course, the usual rules of controlling precedent do not command us to follow other states' lead. However, when dealing with a uniform law, the Statutory Construction Act does. In that Act, to keep uniform laws uniform throughout the states, the General Assembly has instructed us to interpret Pennsylvania's uniform laws in step with other states' like enactments:

> Construction of uniform laws. Statutes uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them.

1 Pa.C.S.A. § 1927; *see also Burke v. Valley Lines, Inc.*, 421 Pa.Super. 362, 617 A.2d 1335, 1338 n. 1 (1992); *Centennial Station Condo. Ass'n v. Schaefer*, 800 A.2d 379, 384 (Pa.Cmwlth.2002) ("Uniform statutes are to be interpreted and construed to effect their general purpose to make uniform the laws of the states that enact them").[16]

¶ 9 For example, New York courts have repeatedly held that documentary evidence

a parent pursuant to the Pennsylvania Uniform Gift to Minors Act belong to the child *as a result of a completed gift.*" *Perlberger v. Perlberger*, 426 Pa.Super. 245, 626 A.2d 1186, 1201 (1993) (Cirillo, J.) (emphasis added). The majority says it is citing *Perlberger*'s observation "for relevance, not precedence" apparently because the former act was repealed. (Majority Opinion at 738, n.5.) As I explain below, *see infra* n.6, I would reapply interpretations of the UGMA on this issue to the UTMA because the changes do not affect the general scheme for making a custodial transfer and the PUTMA specifically validates all PUGMA transfers unless vested rights are affected. In any case, Judge Cirillo's observation was dictum, as we were deciding whether a custodial parent could use the child's PUGMA account assets to support the child. We decided the parent could, citing a specific PUGMA provision to that effect. 626 A.2d at 1200. Despite its claim that it was looking to *Perlberger* for guidance, however, the majority ignores our plain understanding in that case that the donor must have intended and delivered a gift (now termed a transfer) for PUGMA (now PUTMA) to apply at all. Nor do I view *Sutliff v. Sutliff*, 515 Pa. 393, 528 A.2d 1318, 1323 (1987) as governing this issue. There, our Supreme Court was concerned with whether PUGMA assets "may be used to fulfill a parent's support obligation." 528 A.2d at 1320. That is separate from determining whether complying with the formalities of the PUGMA or the PUTMA conclusively establishes that the assets were a gift.

15. The majority observes that although sister states' interpretations serve as persuasive au-

thority, they do not bind us, and cites to that effect our decision in *Commercial National Bank v. Seubert & Asocs.*, 807 A.2d 297, 303 (Pa.Super.2002). *See* Majority Opinion, at 742, n.9. But a fuller examination of that case belies the majority's reliance on it. There, we were interpreting a section of Article 9 of the Uniform Commercial Code. Because no Pennsylvania case decided the issue, we turned to other states' decisions. In so doing, Judge Johnson, writing for a unanimous three-judge panel, quoted our Supreme Court: "While it is a truism that decisions of sister states are not binding precedent on this Court, they may be persuasive authority, and are entitled to even greater deference where consistency and uniformity of application are essential elements of a comprehensive statutory scheme like that contemplated by the [UCC]." *Id.* (quoting *Commonwealth v. Nat'l Bank & Trust Co. of Cent. Pa.*, 469 Pa. 188, 364 A.2d 1331, 1335 (1976)). After reviewing the decisions of the Bankruptcy Court in Massachusetts, applying Massachusetts law, as well as those of the New Jersey Superior Court and the Bankruptcy Courts for the Western District of Pennsylvania and for the District of Maine, we ultimately followed those other courts' views. *Seubert*, 807 A.2d at 304. Rather than supporting the majority's position, because we in fact embraced other courts' interpretation, *Seubert* endorses following sister states' interpretations of uniform laws.

16. After recounting how the states adopted revisions to the UGMA piecemeal, the drafters of the UTMA had this to say about uniformity: "Uniformity in this area is important for the

of a transfer following UGMA[17] procedures raises only a rebuttable presumption that a transfer was intended. Most recently, in *Estate of Ajamian*, 270 A.D.2d 724, 705 N.Y.S.2d 704 (N.Y.App.Div.2000), the decedent father had established UGMA accounts in his children's names in the early 1980s. Over the years he transferred funds between the UGMA accounts, and in the two years before he died, he transferred all of the funds in the UGMA accounts into his own accounts. The court explained:

> As with any irrevocable *inter vivos* transfer, a gift made under the UGMA will be found valid where there is evidence of delivery and donative intent. Here, there is no dispute that the funds decedent used to establish the UGMA accounts were delivered, as the forms executed by decedent to open each account followed the procedures required in the statute. Moreover, such properly established UGMA accounts constitute *prima facie* evidence that a gift was intended. This *prima facie* showing was subject to rebuttal by extrinsic proof that the donor did not possess the requisite intent at the initial establishment of the UGMA accounts because the essential element of donative intent refers to the grantor's initial intent at the time of the conveyance.

*Id.* at 707–08 (quotation and citations omitted). The Appellate Division ultimately held that in that case the rebuttal evidence was insufficient because the evidence only showed the decedent's attitude toward the accounts after he established them, not when he created them. *Id.; see also Gordon v. Gordon*, 70 A.D.2d 86, 419 N.Y.S.2d 684, 688–89 (N.Y.App.Div.1979) (stating rebuttable presumption but holding conclusory allegations in affidavit insufficient to overcome presumption), *aff'd*, 52 N.Y.2d 773, 436 N.Y.S.2d 621, 417 N.E.2d 1009 (1980). A number other states have interpreted their UGMA statutes similarly. *See, e.g., Gulmen v. Gulmen*, 913 S.W.2d 852, 855 (Mo.App.1995); *Heath v. Heath*, 143 Ill.App.3d 390, 97 Ill. Dec. 615, 493 N.E.2d 97 (1986); *Golden v. Golden*, 434 So.2d 978, 979 (Fla.Dist.Ct.App.1983); *Jacobs v. Jacobs*, 128 Cal.App.3d 273, 180 Cal.Rptr. 234 (1982).

¶ 10 Ohio and Indiana decisions confirm that we should properly apply this principle under the PUTMA. In *State v. Keith*, 81 Ohio App.3d 192, 610 N.E.2d 1017 (1991), the question of whether a gift had been made arose in the context of a criminal forfeiture action. The defendant had pled guilty to criminal charges, and as part of the plea, agreed to forfeit certain property under Ohio's anti-racketeering statute. The property she agreed to forfeit included a PUTMA account she held as

[National Conference of Commissioners on Uniform State Laws] has cited UGMA as an example of an act designed to avoid conflicts of law when the law of more than one state may apply to a transaction or a series of transactions." *UTMA* Prefatory Note.

17. Although the Appellate Division was interpreting the prior act, I would do as other states have done and interpret this aspect of the PUTMA the same as the PUGMA. I reach this result because the differences between the two acts do not affect the analysis of whether a transfer, as defined by the act, occurred at all. PUTMA's revisions generally

centered on resolving estate tax issues and removing limitations on the types of property that may be held in a custodial account. *See* Richard L. Stockton, 1 Est. & Pers. Fin. Plan. § 8:47 (2002); *see also* UTMA, Prefatory Note; *id.*, § 11, Comment. In addition, nothing in the PUTMA's revisions negates the conclusion that no transfer occurs unless the transferor intended it. Moreover, the act repealing the PUGMA specifically validates transfers under PUGMA procedures, unless vested rights are harmed or the custodianship extended, and enforces them under the PUTMA. *See* Act 1992, Dec. 16, P.L. 1163, No. 152, § 26(c).

custodian for her daughter. The daughter petitioned to determine the validity of the forfeiture arguing that the money was a gift and did not originate in her mother's criminal activities. The trial court denied the petition, holding that her mother had not complied with the Ohio Transfers to Minors Act.[18] 610 N.E.2d at 1018.

¶ 11 The Court of Appeals affirmed. Citing *Gordon, Jacobs, Heath,* and *Golden,* the court adopted the rule expressed in those cases, and applied it to the Ohio Transfers to Minors Act:

> All the case law we have found agrees that under the Uniform Gifts to Minors Act (predecessor to the Uniform Transfers to Minors Act) there must in fact be a gift. Without donative intent, no gift has been made.
>
> The opening of a bank account pursuant to this Act is *prima facie* evidence of donative intent. Extrinsic evidence may be introduced to demonstrate contrary intent.

*Id.* at 1019 (citations omitted). The Court of Appeals affirmed the trial court's determination that the mother had lacked donative intent, citing the mother's withdrawal of $20,000 from the account for personal use. "By treating the money as her own, Keith's claim of a gift to [her daughter] was drawn into serious doubt." *Id.*[19]

¶ 12 In *In re Hendricks,* 681 N.E.2d 777 (Ind.Ct.App.1997), the Indiana Court of Appeals also had no trouble applying the presumption and burden-shifting analysis

under UTMA. In an appeal from an equitable distribution decree, the wife had used joint marital funds to purchase stocks through an account on which she was named as custodian for the couple's minor child. She later sold the stock and deposited the proceeds into an account she held jointly with her husband. She testified that the money was intended for educational purposes and she had used the UTMA account to avoid tax consequences. The Indiana Court of Appeals affirmed the trial court's finding that the evidence did not rebut the presumption that she intended a gift. The court looked to cases decided under the UGMA because "[t]he UTMA validates all transfers made under its predecessor, the UGMA, and applies to those transfers except to the extent that its application would impair vested rights." *Id.* at 780 n. 1. The court ultimately agreed that evidence that the wife intended to use the money for the child's education did not indicate a lack of donative intent. Indiana's UTMA, like Pennsylvania's, allows the parent to use the UTMA assets to benefit the child, and that a parent used such a scheme to avoid taxes said little about whether a gift was actually intended. *Id.,* 681 N.E.2d at 782; *compare* Ind.Code § 30–2–8.5–29 *with* 20 Pa.C.S.A. § 5314.

¶ 13 Applying the rebuttable presumption to the case before us, I would affirm. The trial court found that Father never intended to give the money to his daughter,[20] which is amply supported by evi-

---

**18.** Ohio Rev.Code Ann. § 1339.31–1339.39.

**19.** Because it affirmed on the intent issue, the Court of Appeals did not reach the propriety of trial court's holding that Keith had not complied with UTMA's formal requirements. *Keith,* 610 N.E.2d at 1019. The court also rejected the daughter's contention that the property was not statutorily subject to forfeiture because Keith had agreed to forfeiture as part of a plea bargain and because the daughter had no legal interest in the account. *Id.*

**20.** The majority opinion states that "Father testified that the balance of the PUGMA account of $5,667.05 in March of 1997 was intended to be gifted to his daughter. N.T., 8/20/01, at 42–44." I cannot locate testimony to that effect. At most I find Father stating that he opened the account because he loved his daughter and wanted to put money in it for her. N.T., 8/20/01, at 42. The majority seems to be drawing an inference from the actual testimony at those pages. Since the

dence in the record. At best, he considered himself a joint owner with his daughter. Shortly after creating the account, he began withdrawing funds, and could not afford to part with such a large sum of money. The trial court further found as a matter of credibility that the Father's actions were simply the result of ignorance, not an expression of bad faith. He largely used the account as a tax-avoidance maneuver. Because the evidence supports the conclusion that Father lacked donative intent at the time he created the account, rather than discounting the importance of that finding, I would affirm.

trial court did not draw the inference, we cannot either.