2016 PA Super 221

| | | |
|---|---|---|
| ISABELLE NATASHA WERNER AND<br>SOPHIA KATERINA WERNER | : | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MELANIE R. WERNER, | : | |
| | : | |
| Appellant | : | No. 1726 WDA 2015 |

Appeal from the Order entered on September 29, 2015
in the Court of Common Pleas of Allegheny County,
Civil Division, No(s):  02-13-4697

| | | |
|---|---|---|
| ISABELLE NATASHA WERNER AND<br>SOPHIA KATERINA WERNER, | : | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| MELANIE R. WERNER | : | No. 1826 WDA 2015 |

Appeal from the Order entered on September 29, 2015
in the Court of Common Pleas of Allegheny County,
Orphans' Court Division, No(s):  4697 of 2013

BEFORE:  BOWES, STABILE and MUSMANNO, JJ.

OPINION BY MUSMANNO, J.:                    **FILED OCTOBER 07, 2016**

In these consolidated appeals, Melanie R. Werner ("Melanie") appeals from the Order ruling that she had breached her fiduciary duty as custodian of two accounts held for the benefit of her daughters, Isabelle Natasha Werner ("Isabelle") and Sophia Katerina Werner ("Sophia") (collectively "the Children"), under the Pennsylvania Uniform Transfer to Minors Act, 20 Pa.C.S.A. § 5301 *et seq.* (hereinafter "PUTMA"), and awarding the Children damages in the form of the proceeds from the sale of a parcel of real

property that Melanie had purchased with the custodial funds. The Children also cross-appeal from this Order, to the extent that it denied their request for the shifting of their attorneys' fees to Melanie. We affirm.

In the mid-1990's, Melanie and her former husband, Eric Werner ("Eric"), adopted the Children. During Melanie and Eric's marriage, they created two separate custodial investment accounts for the benefit of the minor Children (collectively referred to as "the UTMA accounts"),[1] under PUTMA. Both accounts named Melanie as custodian. In August 2009, Melanie and Eric separated. At that time, Eric moved out of the marital residence, a very large home located at 44 Beaver Street, Sewickley, Pennsylvania (hereinafter "the marital residence").

In May 2010,[2] Melanie withdrew the funds in the UTMA accounts, which totaled $252,688.90 (hereinafter "the custodial property"), and deposited the funds in her personal bank account. In June 2010, Melanie used $235,000 of the custodial property to purchase a residence located at 219 Centennial Avenue, Sewickley (hereinafter "the Centennial House"). Melanie listed the title to the Centennial House in her name alone. After purchasing the Centennial House, Melanie used some of her personal funds to make improvements to it.

_____

[1] The original principal amount in each of the UTMA accounts was $125,000. These funds were intended to provide for the Children's future college expenses.

[2] The Children were then 15 and 16, respectively.

- 2 -

Melanie filed a Complaint in divorce against Eric in September 2010. In the divorce proceedings, the trial court entered an Order in September 2010, freezing all assets held for the benefit of the Children, absent prior written consent of both Eric and Melanie.

In August 2013, the Children commenced the instant action against Melanie, seeking monetary damages and an accounting, alleging that Melanie had violated her duties as custodian by misappropriating the custodial property and purchasing the Centennial House. By an Order entered on August 5, 2013, the Orphans' Court ordered that the proceeds of the sale of the Centennial House (the property had sold in August 2013 for $507,000) be held in an escrow account, with $100,000 of the net proceeds to be distributed directly to Melanie.

On December 22, 2014, the Orphans' Court held a non-jury trial,[3] and later conducted supplemental hearings. Shortly prior to trial, the Children filed a Petition (hereinafter "Attorneys' Fees Petition") seeking an order requiring Melanie to pay their attorneys' fees,[4] due to her vexatious and bad faith conduct in the litigation.

By an Order entered on September 29, 2015, the Orphans' Court (1) ruled that Melanie had violated her duty as custodian of the UTMA accounts under PUTMA, and, as damages, the Children were entitled to the entire

_____

[3] At the time of trial, the Children were both enrolled in college.

[4] The Children asserted that they had incurred attorneys' fees of approximately $85,000. Attorneys' Fees Petition, 12/22/14, at 3.

- 3 -

proceeds from the sale of the Centennial House ($507,000); and (2) denied the Attorneys' Fees Petition. Melanie and the Children timely filed separate Notices of Appeal. This Court subsequently consolidated the appeals, *sua sponte*.

Our standard of review from a final order of the Orphans' Court is as follows:

> The findings of a judge of the [O]rphans' [C]ourt division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. … In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.

*In re Estate of Bechtel*, 92 A.3d 833, 837 (Pa. Super. 2014) (citation omitted).

We will first address Melanie's appeal. Initially, we observe that Melanie has failed to include in her brief a statement of questions involved, as required by Pennsylvania Rules of Appellate Procedure 2111(a)(4) and 2116(a). Issues not presented in the statement of questions involved are generally deemed waived. *Krebs v. United Ref. Co.*, 893 A.2d 776, 797 (Pa. Super. 2006); Pa.R.A.P. 2116(a). However, "such a defect may be overlooked where [an] appellant's brief suggests the specific issue to be reviewed and appellant's failure does not impede our ability to address the merits of the issue." *Bailey v. Storlazzi*, 729 A.2d 1206, 1210 (Pa. Super.

1999).  Here, we can discern Melanie's issues from the Argument section of her brief.[5]

We will address Melanie's first two "issues" together due to their relatedness.  Melanie argues that her action in removing the custodial property from the UTMA accounts, and using these funds to purchase the Centennial House, is not a breach of her duties as custodian under PUTMA. *See* Brief for Melanie at 15, 24.  According to Melanie,

> [b]ecause the [Children] never lost ownership of the custodial property, [*i.e.*, by Melanie's purchase of the Centennial House in her own name,] there was not a compensable breach of [Melanie's] custodial duty.  Therefore, [the Orphans' Court's] award of the full net proceeds of the Centennial [House] sale[,] as damages for [Melanie's] mere retitling of the custodial [property], without more, was an error of law and an abuse of discretion.

*Id.* at 24; *see also id.* at 15 (asserting that Melanie "had sole discretion, absent direction from the Court, to manage the investment retention and distribution of … [the custodial property] until [the Children] reached twenty-one [] years of age.").  Melanie, pointing to the irrevocable nature of property gifted under PUTMA, contends that her use of the custodial property to purchase the Centennial House did not change the ownership of those funds by the Children, despite the title to the Centennial House being in Melanie's name alone.  *Id.* at 15 (citing 20 Pa.C.S.A. § 5311(b) (providing

---

[5] *See* Brief for Melanie at 15, 21, and 32 (setting forth three issues under separate subheadings).

that "[a] transfer made pursuant to [PUTMA] is irrevocable, and the custodial property is indefeasibly vested in the minor[.]")).

Moreover, Melanie contends that the Children failed to prove that they incurred any actual damages. Brief for Melanie at 29; *see also id.* at 30-31 (urging that "while [Melanie's] use of the custodial [property] to purchase [the] Centennial [House,] without placing the real estate in custodial title[,] was not in strict conformity with the mandate of [] [P]UTMA, [the Children] did not prove any loss of value or other deleterious financial consequences of that action.").

Melanie further avers that her purchase of the Centennial House with the custodial property was done in good faith, and in furtherance of the Children's interest. *Id.* at 15; *see also id.* at 28 (asserting that Melanie's "actions as custodian of [the custodial property] were made in good faith and based on her understanding of her obligation to safeguard and provide the custodial [property] for [the Children's] benefit ….."). Melanie asserts that the "Centennial [House] was a necessary purchase for [the Children]

and [Melanie] to provide a better living environment[6] and to avoid the extraordinary expense to occupy the marital residence," which, according to Melanie, had a monthly maintenance/operating cost of approximately $40,000, that she could not afford to pay in light of Eric's having restricted Melanie's access to marital funds. *Id.* at 15 (footnote added). Moreover, Melanie contends that she never intended for the Centennial House to be treated as her private property, despite it being titled as such. *Id.* at 18.

Finally, Melanie argues that the Orphans' Court erred in awarding the Children the full proceeds from the sale of the Centennial House, despite Melanie's having used personal funds to improve the Centennial House, which increased the home's utility and the eventual sale price.[7] *Id.* at 24-25. In this regard, Melanie points out that the amount withdrawn from the UTMA accounts was only $252,688.90, but the Centennial House sold, after her improvements, for $507,000. *Id.*

"The purpose of PUTMA is to provide an inexpensive, easy way for giving property to minors." *Sternlicht v. Sternlicht*, 822 A.2d 732, 737 (Pa. Super. 2003). "Whatever its source, custodial property that is held

---

[6] Melanie conceded that Isabelle never stayed at the Centennial House. N.T., 12/21/14, at 27. Sophia stayed at the Centennial House every other week (during Melanie's custodial periods) for approximately one year. *Id.* at 27-28.

[7] Melanie testified that she paid for, *inter alia*, landscaping, a brick patio, new windows, and a bathroom renovation. N.T., 12/21/14, at 29. Melanie, however, does not specify or substantiate the precise amount that she spent, nor is this established by the record.

pursuant to [PUTMA] is the property of the minor child." ***Radakovich v. Radakovich***, 846 A.2d 709, 717 (Pa. Super. 2004); ***see also*** 20 Pa.C.S.A. § 5304. A custodian owes a "fiduciary duty," and "is expected to use the property for the minor's benefit and act in the minor's interest." ***Sutliff v. Sutliff***, 528 A.2d 1318, 1323 (Pa. 1987). "A custodian may not use PUTMA property to benefit h[er]self." ***Sternlicht***, 822 A.2d at 740 (citation omitted). Section 5312 of PUTMA provides, in relevant part, that "in dealing with custodial property, a custodian shall observe the standard of care that would be observed by a prudent person dealing with the property of another …." 20 Pa.C.S.A. § 5312(b).

In the instant case, Melanie concedes that she withdrew the custodial property from the UTMA accounts and used it to purchase the Centennial House, which she titled in her name alone. Though Melanie urges that her primary motivation for purchasing the Centennial House was to benefit the Children by giving them a "safe, secure and affordable" place to reside, on Melanie's custodial days following Melanie and Eric's separation, the Orphans' Court found that "the record [] fails to support the conclusion that the expenditure on the [Centennial House] was for the primary use and benefit of [the Children]." Orphans' Court Opinion, 9/29/15, at 2; ***see also Sternlicht***, 822 A.2d at 740 (holding that a custodian/father's use of PUTMA custodial funds to purchase a residence (titled in his name alone), allegedly for the benefit of his minor daughter, was improper where there was no

evidence that this expenditure was necessary or for the use and benefit of his daughter); **Sutliff**, 528 A.2d at 1323 (holding that a custodian/father breached his fiduciary under PUTMA duty by using custodial funds to defray his child support obligation when father had sufficient personal funds to meet his children's needs).[8]

Additionally, contrary to Melanie's assertion, her misappropriation of the custodial property to purchase the Centennial House did not constitute a "mere retitling of the custodial [property]." Indeed, the Children were, in fact, harmed by Melanie's misappropriation of the custodial property. The Children are both currently enrolled in college, and have incurred significant expenses. However, due to the ongoing litigation concerning this matter, the custodial property has remained inaccessible to the Children for years. Further, the Children were deprived of any interest or investment returns that could have accrued on the custodial property had Melanie not invaded the UTMA accounts.

---

[8] There is some authority for the proposition that when a custodian/parent cannot provide for the child through the parent's personal assets, the child's PUTMA funds may be used for the child's benefit. **See In Re Gumpher**, 840 A.2d 318, 324 (Pa. Super. 2003) (holding that custodian/mother must demonstrate that her assets were exhausted before invading child's PUTMA account for regular care expenses); **Sternlicht**, 822 A.2d at 741 (remanding for inquiry into whether custodian/father could pay for child's private school tuition from father's assets); **see also** 20 Pa.C.S.A. § 5314 (governing the permissible uses of a minor's property by the custodian). In the instant case, however, the Orphans' Court found that the Centennial House was not a necessary expenditure or for the Children's primary benefit, and the record does not indicate that Melanie had insufficient funds to provide for the Children's residential needs, where she had access to the marital residence.

Based on the foregoing, we conclude that the Orphans' Court correctly determined that Melanie's actions constituted a compensable breach of her fiduciary duty as custodian under PUTMA. The record further supports the Orphans' Court's finding that the Centennial House was not a necessary expenditure or for the primary use and benefit of the Children (one of whom never resided in the home). ***See*** Orphans' Court Opinion, 9/29/15, at 2; ***see also Sternlicht***, 822 A.2d at 740.

Accordingly, we must next address whether the remedy awarded by the Orphans' Court for Melanie's breach, *i.e.*, the entire sale proceeds of the Centennial House, ($507,000), was proper.

Section 5319 of PUTMA provides that a minor (or a guardian/legal representative) may petition a court for

> (1) an accounting by the custodian or the custodian's legal representative; or
>
> (2) a determination of responsibility, as between the custodial property and the custodian personally, for claims against the custodial property ….

20 Pa.C.S.A. § 5319(a).[9]

Here, the Orphans' Court addressed the matter of the remedy awarded as follows:

> The issue of available remedies for an accounting action under [P]UTMA [] presents an issue of first impression in Pennsylvania, and therefore, th[e Orphans' C]ourt may look to other jurisdictions' resolutions of the question to make an informed

---

[9] PUTMA contains no specific provision concerning the remedy for a breach of a custodian's fiduciary duty.

decision. *In* [*Re*] *Gumpher*, 840 A.2d [at] 321 … [(looking to the law of other states, under their respective statutes concerning UTMA, which is a uniform Act)]. At least some courts have ordered a custodian who misappropriated UTMA funds to reimburse both the amount determined to have been wrongfully taken from the minor's account and the interest that would have otherwise accrued on those amounts. *Belk ex rel. Belk v. Belk*, 221 N.C. App. 1[, *10] (2012) [(construing North Carolina's version of 20 Pa.C.S.A. § 5319(a), *supra* (which is worded identically), and stating that the statutory language "contains an implied grant of authority which permits a trial court to impose a wide variety of remedies.")]; *Wilson v. Wilson*, 154 P.3d 1136 (Kan. App. 2007); *In re Marriage of Rosenfeld*, 668 N.W.2d 840 (Iowa 2003); *Buder v. Sartore*, 774 P.2d 1383 (Colo. 1989). Because [the Orphans' Court] find[s] these authorities persuasive on the issue, this [c]ourt finds that a [c]ustodian may be required to pay[,] to any minor beneficiaries[,] interest on UTMA funds that have been misappropriated by a custodian.

In calculating the appropriate amount of interest, [the Orphans'] Court finds that [the Children] are entitled to the entire sale proceeds of the Centennial House, $507,000, as a form of return on investment. While [Melanie] points out that she contributed personal monies to the Centennial House, [the Children] are entitled to the full amount of appreciation obtained in the sale because [Melanie] commingled her own funds with [the custodial property,] in violation of [P]UTMA. [P]UTMA states that "[a] custodian at all times shall keep custodial property separate and distinct from all other property in a manner sufficient to identify it clearly as custodial property of the minor." 20 Pa.[C.S.A.] § 5312(d). [Additionally, analogous case law holds that i]f a party mixes personal funds and trust funds,[10] the trustee has the burden of distinguishing his funds from the rest of the trust funds. *See, e.g. Ins. Comm'r v. Blue Cross & Blue Shield of W. Va., Inc*., 638 S.E.2d 144, 157 (W. Va. 2006); *McGarry v. Chew*, 885 N.E.2d 174 (Mass. App. Ct. 2008); *Burns v. Kabboul*, 595 A.2d 1153, 1171 (Pa. Super. [] 1991) [(stating that "[i]f [a] donee of [an] invalid gift has commingled the invalid gift with her own funds, the burden

---

[10] We observe that our Supreme Court has stated that the duties owed by a custodian under PUTMA are properly analogous to those owed by a trustee. *Sutliff*, 528 A.2d at 1323.

is upon the donee to prove how much of the money is her own, and if she cannot do this, the beneficiary of the constructive trust may be entitled to the whole fund.")]. [Here, Melanie] has failed to distinguish what amount of the appreciation is attributable to her own financial sources. Therefore, [the Children] are entitled to the entire sale proceeds of the [Centennial House].

Orphans' Court Opinion, 9/29/15, at 2-3 (footnote added). After reviewing the law and the record, we agree with the Orphans' Court's rationale and determination, and discern no abuse of its discretion or error of law in fashioning an appropriate remedy. Not only was Melanie's comingling of personal assets with the custodial property a breach of her fiduciary duties under PUTMA, but she has not established what amount of the sale price of the Centennial House was attributable to her personal assets. Accordingly, Melanie's first two issues entitle her to no relief.

We next address the sole issue that the Children raise in their cross-appeal,[11] simultaneously with the final "issue" presented by Melanie's brief, as they are related. The Children argue that the Orphans' Court erred by failing to shift their attorneys' fees to Melanie under PUTMA, and, in the alternative, under the Pennsylvania statute governing awards of attorneys' fees, 42 Pa.C.S.A. § 2503. *See* Brief for the Children at 21-28.

Initially, the Children contend that although PUTMA does not include a provision concerning fee shifting, it "authorizes broad relief against

---

[11] The Children present the following issue: "Whether the [Orphans' C]ourt erred in denying [the Children's] request to shift attorneys' fees under (1) [PUTMA;] and (2) general Pennsylvania law[,] including 42 Pa.[C.S.A.] § 2503[,] as a litigation sanction[?]" Brief for the Children at 5.

delinquent custodians, such as [Melanie], including an accounting, and authorizes courts to issue a 'determination of responsibility' of the custodian." *Id.* at 21 (quoting 20 Pa.C.S.A. § 5319(a)). The Children correctly point out that "section 5319 of [P]UTMA has remained largely unexplored by Pennsylvania courts[.]" Brief for the Children at 21; *see also* Orphans' Court Opinion, 9/29/15, at 4 (stating that "[w]hether or not fee shifting is an appropriate remedy under [] [P]UTMA has not been litigated in Pennsylvania."). However, the Children assert that case law from other states on this issue, under their respective UTMA statues, establishes that fee shifting is authorized under PUTMA, and such is an appropriate remedy in the instant case, in light of Melanie's "egregious" conduct. *See* Brief for the Children at 22-26; *see also id.* at 21 (asserting that the Children "cannot be made whole merely by compensatory damages under [P]UTMA, given the fact that any such recovery is reduced by … attorneys' fees.").

Additionally, the Children argue, in the alternative, that they are entitled to an award of attorneys' fees under the Judicial Code, due to Melanie's vexatious conduct in this litigation, wherein she "consistently displayed a pattern of delay, coupled with legally untenable positions." *Id.* at 27; *see also In re Barnes Found.*, 74 A.3d 129, 135 (Pa. Super. 2013) (explaining that "[t]he Judicial Code permits an award of reasonable counsel fees 'as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter.' 42 Pa.C.S. § 2503(7).

Moreover, the court may award counsel fees 'because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.' 42 Pa.C.S. § 2503(9).").

Melanie counters that "there is no provision in [P]UTMA, or any other statute, which requires or authorizes a departure from the general rule" that parties to litigation are responsible for their own counsel fees and costs. Brief for Melanie at 32 (citing, *inter alia*, **Shanks v. Alderson**, 582 A.2d 883, 885 (Pa. Super. 1990) (stating that "[t]here can be no recovery for counsel fees from the adverse party to a cause, in the absence of express statutory allowance of the same[,] or clear agreement by the parties[,] or some other established exception[.]") (citation and ellipses omitted)). Additionally, Melanie contends that there was no evidence presented that her conduct was obdurate, vexatious or in bad faith. Brief for Melanie at 36.

This Court will not disturb a lower court's ruling on a request for an award of attorneys' fees absent an abuse of discretion, which occurs if the court has failed to follow proper legal procedures or misapplied the law. **Miller v. Miller**, 983 A.2d 736, 743 (Pa. Super. 2009); **see also In re Estate of Rees**, 625 A.2d 1203, 1206 (Pa. Super. 1993) (stating that "when reviewing the judgment of the Orphans' Court regarding the allowance or disallowance of attorneys' … fees, absent a clear error or an abuse of discretion, we will not interfere with the Orphans' Court['s] determination.").

In the instant case, the Orphans' Court cited in its Opinion case law from other states on the issue of an award of attorneys' fees under their respective UTMA statutes, and opined that "[P]UTMA allows fee-shifting or an award of attorney's fees in actions against a[] [P]UTMA custodian when appropriate as a sanction against the [c]ustodian and to ensure that the [p]etitioners are made whole."  Orphans' Court Opinion, 9/29/15, at 4 (citing, *inter alia*, **Mangiante v. Niemiec**, 910 A.2d 235, 241 (Conn. App. 2006) (in an action alleging breach of fiduciary duty of a custodian under that state's UTMA statute, stating that "[a] minor beneficiary who must expend more in attorney's fees to recover the corpus of the account than its original value cannot be made whole again without an award of attorney's fees.")).  However, the Orphans' Court here ruled that the Children were not entitled to fee shifting because "the record does not indicate the egregious conduct required to impose an award of attorneys' fees against [Melanie]." Orphans' Court Opinion, 9/29/15, at 4; **see also id.** (stating that "[t]his case involved a personal family matter that was hotly contested by both parties, but zealous litigation is not *per se* vexatious or in bad faith.").

Assuming, *arguendo*, that PUTMA authorizes fee shifting (*i.e.*, under the general, non-specific language of section 5319(a)(2) authorizing courts to issue a "determination of responsibility" of a custodian), the Children are not entitled to an award of attorneys' fees under the circumstances of this case.   Indeed, the record supports the Orphans' Court's finding that

Melanie's conduct in this litigation was not sufficiently "egregious" for the imposition of attorneys' fees against her, under either PUTMA or section 2503 of the Judicial Code. Like the Orphans' Court, we do not deem Melanie's conduct in this contentious litigation to be vexatious or otherwise in bad faith. Though the Children are correct in pointing out that Melanie's breach, and this resultant litigation, deprived them of the custodial funds for a considerable period of time, the Orphans' Court awarded them damages that constituted a substantial return on their investment (the damages award exceeded the amount of the custodial property that Melanie had initially liquidated by approximately $250,000). Finally, we disagree with the Children's assertion that Melanie has presented in this litigation only "legally untenable positions." Accordingly, we discern no abuse of discretion or error of law by the Orphans' Court in denying the Attorneys' Fees Petition, and, therefore, the Children's sole issue on appeal fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/7/2016