J-A01020-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ISABELLE NATASHA WERNER, AND SOPHIA KATERINA WERNER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| MELANIE R. WERNER | |
| Appellant | No. 646 WDA 2016 |

Appeal from the Order April 6, 2016
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): 02-13-4697

BEFORE:  BOWES, J., OLSON, J., AND STRASSBURGER,* J.

MEMORANDUM BY  BOWES, J.:                FILED: July 3, 2017

Melanie R. Werner appeals the April 6, 2016 order denying her petition to open and strike the judgment entered in favor of her daughters, Isabelle Natasha Werner and Sophia Katerina Werner (collectively "Appellees") in the amount of $507,000.  We vacate the order and remand for further proceedings.

This case concerns the interplay among seven orders entered by different jurists presiding over matters in the Allegheny County Court of Common Pleas Family and Orphans' divisions, respectively.  We previously summarized the relevant procedural history of the orphans' court case as follows:

_____
*  Retired Senior Judge assigned to the Superior Court.

In the mid-1990's, [Appellant] and her former husband, Eric Werner, . . . adopted [Appellees]. During [Appellant] and [Mr. Werner's] marriage, they created two separate custodial investment accounts for the benefit of [Appellees] (collectively referred to as "the UTMA accounts"), under [the Pennsylvania Uniform Transfers to Minors Act ("PUTMA")]. Both accounts named [Appellant] as custodian. In August 2009, [Appellant] and [Mr. Werner] separated. At that time, [Mr. Werner] moved out of the marital residence, a very large home located at 44 Beaver Street, Sewickley, Pennsylvania (hereinafter "the marital residence").

In May 2010, [Appellant] withdrew the funds in the UTMA accounts, which totaled $252,688.90 (hereinafter "the custodial property"), and deposited the funds in her personal bank account. In June 2010, [Appellant] used $235,000 of the custodial property to purchase a residence located at 219 Centennial Avenue, Sewickley (hereinafter "the Centennial House"). [Appellant] listed the title to the Centennial House in her name alone. After purchasing the Centennial House, [Appellant] used some of her personal funds to make improvements to it.

[Appellant] filed a Complaint in divorce against [Mr. Werner] in September 2010. In the divorce proceedings, the trial court entered an Order in September 2010, freezing all assets held for the benefit of the Children, absent prior written consent of both [Mr. Werner] and [Appellant].

In August 2013, [Appellees] commenced the instant action against [Appellant], seeking monetary damages and an accounting, alleging that [Appellant] had violated her duties as custodian by misappropriating the custodial property and purchasing the Centennial House.

*Werner v. Werner*, 149 A.3d 338, 340 (Pa.Super. 2016) (footnotes omitted).

Meanwhile, about the same time that Appellees commenced their orphans' court action, the family division judge that was presiding over

Appellant and Mr. Werner's divorce proceedings entered two orders that: (1) permitted Appellant to sell the Centennial Avenue property; (2) granted Appellant $100,000 of the proceeds of that sale, and (3) created an interest bearing escrow account for the balance of the proceeds and continued the prohibition of withdrawals from the UTMA account absent court order or the agreement of the parties.[1]  Family Court Order, 8/5/13, at 1; Family Court Order, 8/19/13, at 1.  The family court specifically directed that its August 5, 2013 order would be subject to the orphans' court's discretion once it was determined that the money was taken from the UTMA accounts.  On April 9, 2014, the orphans' court entered an order in the underlying action that effectively ratified the family court's formation of the escrow account and directed that $260,000 of the estimated $407,000 balance of the proceeds be transferred to an investment account for Appellees' exclusive benefit.

_____

[1] In addition to permitting the sale of the Centennial Avenue property and directing that the proceeds of the sale be placed in trust, the family court's August 5, 2013 order included two handwritten notations that read as follows:

> b.)  This matter shall be dealt with before Master Miller at the end of the ongoing trial (and/or if the accounts in question are PUTMA accounts then J. Zottola [who presided over the orphans' court proceedings])[;]

> c.)  [Appellant] may have $100,000 of the proceeds as long as the proceeds exceed $250,000[.]

Family Court Order, 8/5/13, at 1.

*See* Orphans' Court Order, 4/9/14, at 1-2. That money was deposited in the IOLTA account assigned to Appellees' counsel.

Thereafter,

[on] December 22, 2014, the Orphans' Court held a non-jury trial, and later conducted supplemental hearings. Shortly prior to trial, [Appellees] filed a Petition (hereinafter "Attorneys' Fees Petition") seeking an order requiring [Appellant] to pay their attorneys' fees, due to her vexatious and bad faith conduct in the litigation.

By an Order entered on September 29, 2015, the Orphans' Court (1) ruled that [Appellant] had violated her duty as custodian of the UTMA accounts under PUTMA, and, as damages, the Children were entitled to the entire proceeds from the sale of the Centennial House ($507,000); and (2) denied the Attorneys' Fees Petition.

*Werner supra*, at 340-341 (footnotes omitted). We affirmed the orphans' court order awarding Appellees the total net proceeds from the sale, *i.e.*, $507,000, as damages for Appellant's breach of her fiduciary duty pursuant to PUTMA. *Id*.

On December 1, 2015, Appellees filed in the orphans' court a motion to release the balance of the escrow funds, which they conceded was approximately $147,000 "after [Appellant's] retention of $100,000, and [the orphans'] [c]ourt's original disbursement to [Appellees]." Motion For Release of Funds From Escrow Account, 12/1/15, at 2. On the same date, Appellees entered judgment in the orphans' court in the amount of $507,000, the **entirety** of the proceeds of the sale. Appellant filed a timely petition to open and strike the judgment. She asserted that the judgment

was void on its face because: (1) the orphans' court order did not expressly subject her to personal liability or set forth a specific sum due to Appellees; (2) the proceeds of the sale of the Centennial Avenue property were held in an interest bearing escrow account; and (3) a portion of the account was previously distributed by agreement. On April 6, 2016, the orphans' court denied Appellant's motion on procedural grounds without reaching the merits of her arguments.[2] Essentially, the court reasoned that it lacked jurisdiction to entertain the motion while the underlying award was before this Court. This timely appeal followed.

Appellant presents four questions for our review:

[1.] May an order which awards recovery to parties from funds held *in custodia legis* be used to enter judgment against a party in her individual capacity?

[2.] May an order which awards recovery to a party from funds held *in custodia legis* be used to enter judgment against an individual for the full, original amount of the funds despite prior court-approved, distributions for the fund?

[3.] May an order which does not indicate a personal obligation to pay or identify a sum certain due be the basis for entry of monetary judgment against an individual?

[4.] Does the pendency of the appeal of an order awarding an *in rem* recovery against a fund *in custodia legis* deprive the lower court of jurisdiction to strike an *in personam* judgment entered pursuant to that order?

---

[2] The orphans' court denied without explanation Appellees' motion to release the escrowed funds.

Appellant's brief at 4.

Initially, we observe that "a petition to strike and a petition to open are two distinct forms of relief, each with separate remedies." ***Resolution Trust Corp. v. Copley Qu–Wayne Associates***, 683 A.2d 269, 273 (Pa. 1996). While Appellant styled the underlying entreaty as a petition to open and strike the judgment, it is obvious from her arguments implicating an alleged irregularity in the certified record that she seeks to strike the judgment. As our High Court explained, "A petition to strike a judgment is a common law proceeding which operates as a demurrer to the record. A petition to strike a judgment may be granted only for a fatal defect or irregularity appearing on the face of the record." ***Id***. (citations omitted). Furthermore, "[a] petition to strike a judgment will not be granted unless a fatal defect in the judgment appears on the face of the record[ and] [m]atters outside of the record will not be considered, and if the record is self-sustaining, the judgment will not be stricken." ***Morgan v. Morgan***, 117 A.3d 757, 761 (Pa.Super. 2015) (quoting ***Bell v. Kater***, 943 A.2d 293, 295 (Pa.Super. 2008)). We review a trial court order denying a petition to strike a judgment for an abuse of discretion or legal error. ***Id***.

The crux of Appellant's argument is that she is not personally liable to her daughters and that their recovery in this proceeding is limited to the existing balance of the escrowed funds. Thus, she asserts that the $507,000 judgment entered against her in this case is defective on its face. Appellees

- 6 -

counter that the orphans' court order awarding Appellees the entirety of the net proceeds, *i.e.*, $507,000, from the sale of the Centennial Avenue residence was, in fact, entered against Appellant personally and not merely as the custodian of her daughters' PUTMA accounts. They continue that, in light of the fact that Appellant retained $100,000 of the initial proceeds for her personal benefit and the orphans' court determined that Appellees were entitled to all of the net proceeds of the sale, including the $147,000 balance of the escrow account, judgment was properly entered on the award as a preliminary step toward reclaiming the $247,000 to which they are rightfully owed.

Both parties level legitimate concerns regarding the interplay among the various orders entered in the family and orphans' divisions of the Court of Common Pleas and the enduring effect of those orders upon their respective rights. However, as noted *supra*, the trial court declined to address the merits of Appellant's petition to strike the judgment entered on the $507,000 award because it believed that Appellant's concomitant appeal divested it of jurisdiction over the matter pursuant to Pa.R.A.P. 1701(a) ("Except as otherwise prescribed by these rules, after an appeal is taken . . ., the trial court . . . may no longer proceed further in the matter."). **See** Trial Court Opinion, 8/18/16, at 2-3.

As this Court subsequently affirmed the order awarding Appellees the entirety of the proceeds from the sale of the Centennial Avenue home and

remanded the certified record to the orphans' court, that tribunal is no longer constrained by Rule 1701. ***See Werner***, ***supra***. Thus, we vacate the order denying Appellant's motion to open and strike the judgment and remand the matter for the orphans' court to address the merits of Appellant's petition and to determine whether Appellant is personally liable to her daughters under the September 29, 2015 order and, if so, the extent of that liability in light of the family court's qualified grant of $100,000 to Mother from the sale proceeds and the orphans' court's prior distribution to Appellees totaling $260,000.

Order vacated. Matter remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/3/2017