J-A29041-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CURAHN LORENZO CANTY | : | |
| | : | |
| Appellant | : | No. 620 MDA 2020 |

Appeal from the Judgment of Sentence Entered January 8, 2020
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0005916-2018

BEFORE:   DUBOW, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                **FILED FEBRUARY 17, 2021**

Appellant, Curahn Lorenzo Canty, appeals from the judgment of sentence imposed after his convictions for persons not to possess firearms, firearms not to be carried without a license, and possession of a small amount of marijuana.[1]  In this appeal, Appellant argues that his conviction for persons not to possess firearms was against the weight of the evidence.  Upon review, we affirm.

On September 2, 2018, two Lancaster City Bureau of Police officers approached a car parked illegally in a high-crime location within the City of Lancaster.  Appellant, who was in the front passenger seat of the car, admitted to possessing marijuana, which he gave to the officers, and he was observed

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 6105(a)(1), 18 Pa.C.S. § 6106(a)(1), and 35 P.S. § 780-113(a)(31), respectively.

moving his hand under his right leg.  After being removed from the vehicle, the officers discovered a semi-automatic handgun with an extended magazine on the passenger seat where Appellant had been sitting.

Appellant was arrested and charged with the above-stated offenses. The persons not to possess firearms count was bifurcated and Appellant proceeded to a jury trial on that charge on October 7, 2019.  On October 8, 2019, the jury convicted Appellant of that offense.  On December 30, 2019, the trial court sentenced Appellant to a term of imprisonment of five to ten years.  On January 8, 2019, Appellant entered a nolo contendere plea to the firearms not to be carried without a license and possession of marijuana charges and he was sentenced on those counts pursuant to a plea agreement.[2]

After being granted an extension by the trial court, Appellant filed a post-sentence motion on February 26, 2020, in which he raised the weight-of-the-evidence claim presented in this appeal.  The Commonwealth filed an answer, and on April 3, 2020, the trial court entered an order denying the post-sentence motion.  Appellant then filed a timely notice of appeal.[3]

Appellant raises the following issue for our review:  "Did the trial court err and abuse its discretion in not overturning the verdict after trial as it was

_____

[2] Appellant received a sentence of three-and-a-half to seven years of imprisonment on the firearms not to be carried without a license charge and 30 days of probation on the marijuana charge.  Both sentences were directed to run concurrently with the sentence on the persons not to possess firearms charge.

[3] Appellant filed his statement of errors complained of on appeal on May 4, 2020.  The trial court entered its opinion on June 2, 2020.

against the weight of the evidence?" Appellant's Brief at 4 (unnecessary capitalization omitted). Appellant argues that the verdict was against the weight of the evidence based upon the trial testimony of Taylor Eisenberger, the driver of the stopped vehicle and owner of the firearm in question, that Appellant was unaware that the handgun was on the front passenger seat when he entered the car just prior to the officers' arrival. Appellant contends that Eisenberger's post-arrest statement that Appellant was aware of the gun was made after he was threatened with losing his car and license to carry a firearm if he did not implicate either Appellant or the third occupant of the car. Appellant argues that, based on Eisenberger's ownership of the firearm and proximity to Appellant prior to their interactions with the police, Eisenberger's testimony so outweighed the Commonwealth's contrary evidence that a new trial is necessary.

We are guided by the following principles when reviewing a weight-of-the-evidence claim. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of witnesses." *Commonwealth v. Cramer*, 195 A.3d 594, 600 (Pa. Super. 2018) (citation omitted). A verdict will only be reversed as against the weight of the evidence where the evidence is "so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id.* at 601 (citation omitted). The factfinder is charged with the responsibility to resolve contradictory testimony and questions of credibility,

and we may not substitute our judgment in place of the factfinder's. *Id.* at 600.

"[A]ppellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Rosser*, 135 A.3d 1077, 1090 (Pa. Super. 2016) (*en banc*) (citation omitted). When the trial court finds that the verdict is not against the weight of the evidence, "we must give the gravest consideration to the trial court's conclusion because it is the trial court, and not the appellate court, that 'had the opportunity to see and hear the evidence presented.'" *Cramer*, 195 A.3d at 601 (citation omitted). Our review of weight-of-the-evidence claims is "extremely limited" and solely "consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence." *Rosser*, 135 A.3d at 1090 (citation omitted).

The evidence elicited at trial reveals that, on September 3, 2018, Officers Timothy Sinnott and Jacob Bingham were on patrol in a marked police car when they saw a car parked in a posted no-parking zone on the 500 block of Locust Street in Lancaster. N.T., 10/7/19, at 71-74, 155-56. Officer Sinnott described that block during his testimony as "an extremely high crime area," and each officer stated that they had made numerous arrests for narcotics, firearms, and violent offenses on that block. *Id.* at 72-73, 156-58. The officers could detect that the parked vehicle was occupied as they

approached, and Officer Sinnott testified that he saw no one entering or exiting during the fifteen seconds from when they first saw the vehicle to when they stopped their own car. *Id.* at 75-76, 158. While it was nighttime and the area of the stopped vehicle was not well illuminated, the officers had good visibility of the car owing first to the headlights of the police vehicle and then to their flashlights once they had exited their vehicle. *Id.* at 76-78, 92-93, 158-59.

Officer Sinnott approached the driver's side of the stopped car where he encountered Eisenberger in the driver's seat and the third individual in the vehicle, Isaac Lopez, seated behind Eisenberger, while Officer Bingham made contact with Appellant in the front passenger seat. *Id.* at 78-79, 156-60. Officer Bingham first asked Appellant for identification and then if there was anything in the car that should not be there. *Id.* at 80, 160, 167-68. Appellant did not give an audible response to this question and instead took a baggie of marijuana out of his right rear pocket and threw it on the center console. *Id.* at 80, 167-68. During this initial portion of the encounter, Officer Bingham described Appellant as having a "very nervous" and distracted demeanor and he appeared to be listening to the conversation Officer Sinnott was having with the other occupants of the vehicle rather than to Officer Bingham. *Id.* at 162-63.

Officer Bingham then told Appellant that "if there's anything else in the car, we're going to find it." *Id.* at 168. Officer Bingham stated that at this point he observed Appellant's chest rising and falling as he became more

- 5 -

nervous; Appellant then lifted his hands up from his lap and moved them out through the open window. *Id.* at 164-65, 168-69. Officer Bingham asked Appellant to calm down and place his hands back on his lap. *Id.* at 165-66. Appellant responded that he did not "want to get shot." *Id.* at 165.

> Officer Bingham described Appellant's next actions as follows:
>
> After that he did put his hands down on his lap and immediately reached -- he leaned with his whole body over to the left side in a very clear unnatural way and he moved his right hand, which was on his right, and began to, with his hands still on his thigh, reach underneath.

*Id.* at 166-67. Officer Bingham stated that he instructed Appellant to stop reaching under his leg, but Appellant continued to do so. *Id.* at 167. Officer Bingham then grabbed Appellant's wrist firmly. *Id.* The officers then asked Appellant and Eisenberger to place their hands on the dashboard and Lopez to place his hands on the driver's seat headrest, while they waited for backup. *Id.* at 81-82.

Once backup arrived, Officer Bingham removed Appellant from the vehicle. *Id.* at 83, 169-70. At that point, Officer Sinnott could see the firearm on the front passenger seat in the area where Appellant's right buttocks had been. *Id.* at 83-84. Officer Sinnott informed Officer Bingham of the presence of the firearm and the latter retrieved it after placing Appellant under the supervision of the backup officers. *Id.* at 84, 169-71. Officer Sinnott testified that there was no way that either Eisenberger or Lopez could have placed the firearm on Appellant's seat as he was removed from the car because the other

two men remained still the whole time in compliance with the officer's instructions. *Id.* at 84-85.

The firearm was a Glock 43 nine millimeter semi-automatic pistol with a ten bullet extended magazine. *Id.* at 88-90, 108. Officer Sinnott testified that while the gun was relatively small and commonly used for concealed carry, the extension on the magazine of several inches made the gun bulkier and defeated the purpose of concealment. *Id.* at 95, 100. The parties stipulated that the pistol was a functional firearm and that Appellant was prohibited by law from possessing due to 2014 burglary and robbery convictions. N.T., 10/8/19, at 207-08. The pistol was submitted for DNA and fingerprint testing, but insufficient genetic material was available for testing and no usable fingerprints could be obtained from the pistol. N.T., 10/7/19, at 117, 143-44.

Eisenberger testified at trial on behalf of the defense that he owned the Glock pistol and had a valid license to carry the firearm. N.T., 10/8/19, at 213-14. Eisenberger stated that he had no special place where he kept the pistol in his car and sometimes he would put it in the middle compartment or under the seat or just throw it "wherever." *Id.* at 215-16. Eisenberger often placed the gun on the front passenger seat for storage. *Id.* at 217.

Eisenberger testified that on September 3, 2018, he had parked in the no-parking zone in the vicinity of Lopez's residence, standing outside talking with Appellant and Lopez for approximately 30 minutes. *Id.* at 211. They entered the car only one or two minutes prior to the police arriving. *Id.* at

213, 218. Eisenberger stated that during the stop, he told Officer Sinnott that there was a firearm in the vehicle and he had a license to carry, but he was not sure where exactly in the car the pistol was located. *Id.* at 216, 225-26. Eisenberger testified that he never gave Appellant the pistol to hold, never informed Appellant where the firearm was located, and never saw Appellant handling the firearm. *Id.* at 217-19. While Eisenberger noticed that Appellant looked nervous, he did not see Appellant move his hands at all. *Id.* at 216-17.

Eisenberger testified that, during a later interview at the police station, the officer he spoke with told him that he could potentially lose his car and license to carry if he did not say that one of the vehicle's other occupants was aware of the firearm's presence in the car. *Id.* at 221-22. Eisenberger then informed the officer that Appellant knew the firearm was on the passenger seat. *Id.* at 222. Eisenberger explained that this statement to the officer was not truthful and he only said it to avoid any negative consequences or further dealings with the police. *Id.* at 222-24.

The Commonwealth then called Officer Sinnott as a rebuttal witness to Eisenberger's testimony. Officer Sinnott testified that Eisenberger told him during the traffic stop that there was a firearm in the vehicle and that it might be in the glove compartment or in between the seats. *Id.* at 237-38. Officer Sinnott stated that when he asked Eisenberger about the firearm his demeanor became "extremely nervous" and he "started [] fidgeting around in the car." *Id.* at 238-39. Eisenberger then asked to get out of the car, which

"raised [Officer Sinnott's] concern level pretty high" and led him to call for backup. *Id.* at 239.

Officer Sinnott stated that his conversation with Eisenberger at the police station occurred near the booking counter outside the presence of Appellant and Lopez. *Id.* at 239-41. Eisenberger told the officer that he had given Appellant the firearm prior to the arrival of the police and he thought Appellant had the gun in his pocket when they arrived. *Id.* at 243. Eisenberger stated that he was not sure how the firearm had ended up under Appellant's leg. *Id.* Officer Sinnott described Eisenberger's demeanor as calm and that the conversation at the police station was "nonchalant [and] normal." *Id.* at 244. Officer Sinnott testified that he told Eisenberger that it was possible he would lose his license to carry over the incident "but it was just [] an informative thing" rather than a threat, and the officer stated that he did not tell Eisenberger that he would lose his car. *Id.* at 244-246.

Reviewing this evidence, the trial court concluded that the jury's verdict was not so contrary to the evidence as to shock the court's sense of justice. Trial Court Opinion, 6/2/20, at 8. While the trial court acknowledged Eisenberger's testimony that Appellant was never in possession of the firearm, it contrasted it with the testimony of Officers Sinnott and Bingham that the pistol was found on the passenger seat in the space vacated by Appellant's upper right leg, Appellant had been fidgeting with something in that area under his right leg during the traffic stop, and there was no possibility that either of the other two occupants could have placed the firearm on the seat.

*Id.* at 7-8. The trial court further observed that Eisenberger admitted in his testimony that he gave inconsistent statements to police on the night of the incident, and it was solely for the jury to decide whether to credit or discredit his trial testimony. *Id.* at 8. As the trial court explained, the jury was instructed that if it found Eisenberger gave a statement on an earlier occasion that was inconsistent with his trial testimony, the jury could consider this fact to judge Eisenberger's credibility and the weight of his testimony. *Id.* at 8 n.5 (citing N.T., 10/8/19, at 291).

Upon review, we discern no abuse of discretion in the trial court's finding that Appellant's conviction for persons not to possess firearms was not against the weight of the evidence. The evidence was not "so tenuous, vague and uncertain that the verdict shocks the conscience of the court," but rather the testimony of the two officers regarding the September 3, 2018 traffic stop was definite, certain, and internally consistent. *Cramer*, 195 A.3d at 600. The officers' testimony showed that Appellant was sitting directly on top of a firearm and that Appellant made motions reaching under his right leg at the exact position where the firearm was found once Appellant stood up. While Eisenberger testified at trial that he had left the pistol on the passenger seat and Appellant had no knowledge or possession of it, Eisenberger also admitted that he informed the police at the station that Appellant was aware that the firearm was on the passenger seat. Officer Sinnott's testimony was consistent with Eisenberger's post-arrest statement regarding Appellant's knowledge of the gun. The question of whether to accept as credible Eisenberger's different

account of the events during his trial testimony was squarely within the jury's authority as fact-finder, and we may not substitute our judgment on this question for that of the jury. *Id.* at 600. Appellant is therefore entitled to no relief on his weight-of-the-evidence claim.

Appellant also argues that the jury issued an inconsistent verdict based on the fact that the jury found in response to a special interrogatory that Appellant was not "in physical possession or control of the firearm, whether visible, concealed about [Appellant] or within [Appellant's] reach." N.T., 10/8/19, at 312.[4] Appellant contends that the jury's "inherently self-contradicting" finding was "counterintuitive as a person cannot possess a firearm if he does not control [] the firearm." Appellant's Brief at 10, 12.

While Appellant raised this claim in his Pa.R.A.P. 1925(b) statement, he did not include this issue in the statement of questions presented section of his appellate brief, nor did he include a separate section for this issue in the argument section of his brief. Concise Statement of Errors Complained of on Appeal, 5/4/20, ¶3. Appellant also failed to cite to any relevant authority or develop this argument in any meaningful way to allow for our review. Therefore, we conclude that this issue is waived. *See* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions

---

[4] The trial court directed that the jury answer the special interrogatory if it found Appellant guilty of persons not to possess firearms in order to determine whether the offense would be graded as a felony of the first degree or second degree. N.T., 10/8/19, at 302-03; 18 Pa.C.S. § 6105(a.1)(1), (1.1)(i).

involved or is fairly suggested thereby."); Pa.R.A.P. 2119(a) (the argument section of the appellant's brief "shall be divided into as many parts as there are questions to be argued"); *In the Interest of D.R.-W.*, 227 A.3d 905, 910-11 (Pa. Super. 2020) (appellant's failure to properly divide brief into as many questions sought to be argued coupled with brief's lack of citations to relevant authority and otherwise undeveloped argument resulted in waiver of claims); *Werner v. Werner*, 149 A.3d 338, 341 (Pa. Super. 2016) (failure to include issue in statement of questions presented portion of an appellant's brief generally results in waiver).[5]

Judgment of sentence affirmed.

---

[5] Even if we were to address Appellant's inconsistent verdict argument, we would find that it lacks merit.  It is well-established that inconsistent jury verdicts are permissible and will not be disturbed so long as there is sufficient evidence to support the verdict.  *Commonwealth v. Burton*, 234 A.3d 824, 829 (Pa. Super. 2020).  Viewed in the light most favorable to the Commonwealth, the evidence here was clearly sufficient to show that Appellant possessed the firearm within the meaning of the persons not to possess statute.  *See Commonwealth v. Hopkins*, 67 A.3d 817, 819, 821 (Pa. Super. 2013) (evidence was sufficient to show that defendant had constructive possession of firearm where the firearm was found tucked between his car seat and center console and the defendant was seen reaching in that area just prior to his apprehension); *see also Commonwealth v. Rose*, 960 A.2d 149, 157-59 (Pa. Super. 2008) (jury's disregard of instructions on verdict slip by returning a guilty verdict that was inconsistent with their answer to interrogatory was not grounds for setting aside verdict as there was sufficient evidence to support the verdict and the jury's decision "may best be described as an exercise in lenity").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>02/17/2021</u>