J-S32001-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: R.F.D.R.C., A MINOR  APPEAL OF J.H., MOTHER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 383 EDA 2019 |

Appeal from the Order Entered January 11, 2019
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s):  CP-51-AP-0000796-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: A.U.H-J., A MINOR  APPEAL OF J.H., MOTHER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 384 EDA 2019 |

Appeal from the Order Entered January 11, 2019
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s):  CP-51-AP-0000797-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: R.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: J.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 386 EDA 2019 |

Appeal from the Order Entered January 11, 2019
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-DP-0002785-2016

IN THE INTEREST OF: A.H., A  : IN THE SUPERIOR COURT OF
MINOR        :   PENNSYLVANIA
           :
           :
APPEAL OF: J.H., MOTHER  :
           :
           :
           :
           : No. 387 EDA 2019

Appeal from the Order Entered January 11, 2019
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-DP-0002091-2017

BEFORE: SHOGAN, J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY SHOGAN, J.:      **FILED JULY 16, 2019**

At appellate docket numbers 383 EDA 2019 and 384 EDA 2019, J.H. ("Mother") appeals from the orders terminating her parental rights to her two daughters, R.C. also known as R.F.D.R.C., and A.H. also known as A.U.H.-J. and A.H.-J.[1] (collectively "the Children"). At appellate docket number 387 EDA 2019, Mother appeals from the order changing A.H.'s permanency goal to adoption.[2] We affirm.

---

[1] The trial court terminated the parental rights of A.H.'s father, I.J., on January 11, 2019. I.J. has not appealed.

[2] Mother purports to appeal at 386 EDA 2019 from a January 11, 2019 order changing R.C.'s permanency goal. Notice of Appeal, 1/31/19. The trial court did not change R.C.'s permanency goal on January 11, 2019, because her father's parental rights had not been terminated. N.T., 1/11/19, at 53–55. According to the Department of Human Services, the trial court did not change R.C.'s permanency goal until March 5, 2019, following the termination of her father's parental rights. Department of Human Services' Brief at 3 n.1 and n.2. Therefore, we quash the appeal at 386 EDA 2019.

R.C. was born in July 2016 at twenty-three weeks gestation and required oxygen and a feeding tube; she and Mother tested positive for marijuana and opioids at R.C.'s birth. N.T., 1/11/19, at 18, 31–32, 42. On December 14, 2016, the Department of Human Services ("DHS") obtained an Order of Protective Custody for R.C. upon her hospital discharge. R.C. entered a pre-adoptive medical foster home in December 2016. *Id.* at 16, 18, 42. The trial court declared R.C. dependent on December 23, 2016. Petition to Terminate Parental Rights Re R.C., 10/5/18, at ¶ DD.

A.H. was born in June 2017 at twenty-seven weeks gestation; Mother tested positive for marijuana at A.H.'s birth. N.T., 1/11/19, at 31–32, 43. On August 7, 2017, DHS obtained an Order of Protective Custody for A.H. upon her discharge from the hospital. A.H. entered the same pre-adoptive medical foster home as R.C. in August 2017. *Id.* 10, 16, 31–32, 39. The trial court declared A.H. dependent on September 8, 2017. Petition to Terminate Parental Rights Re A.H., 10/5/18, at ¶ RR.

A single case plan ("SCP") was created for Mother on August 8, 2017. Her SCP objectives included: (1) completion of random drug screens; (2) following recommendations of a dual diagnosis assessment; (3) continuation of services from Achieving Reunification Center ("ARC"), including parenting classes; (4) visitation with the Children; and (5) continuation of mental health treatment and drug and alcohol counseling. N.T., 1/11/19, at 19. Because Mother failed to meet her SCP objectives for reunification, DHS filed petitions

to terminate Mother's parental rights to the Children and to change their permanency goals from reunification to adoption. Petitions, 10/5/18.

The trial court conducted a termination/goal change hearing on January 11, 2018, at which Mr. Gregory Williams, the Community Umbrella Agency ("CUA") caseworker, and Mother testified. At the time of the hearing, R.C. had been in foster care for twenty-five months, and A.H. had been in foster care for seventeen months. N.T., 1/11/19, at 16, 18. Following the hearing, the trial court terminated Mother's parental rights to the Children pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and § 2511(b),[3] and changed A.H.'s permanency goal to adoption. Mother filed separate notices of appeal and Pa.R.A.P. 1925(a)(2) statements of matters complained of on appeal on January 31, 2018. The trial court filed a single Pa.R.A.P. 1925(a) opinion on March 12, 2019.

Mother presents the following issues for our consideration:

1. The trial court committed an error of law and abuse of discretion by involuntarily terminating [Mother's] parental rights under 23 Pa. C.S. § 2511(a), where the evidence showed

---

[3] Mother has waived any challenge to termination pursuant to 23 Pa.C.S. § 2511(a)(5) because she failed to provide any legal citations or analysis in her appellate brief. Pa.R.A.P. 2119(a) and (b); *see also Banfield v. Cortes*, 110 A.3d 155, 168 (Pa. 2015) ("Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate [an] appellant's arguments for him." *Wirth v. Commonwealth*, 95 A.3d 822, 837 (Pa. 2014)).

that [M]other substantially complied with the Family Service Plan goals established by the Department of Human Services of the City of Philadelphia (DHS).

2. The trial court committed an error of law and abuse of discretion by involuntarily terminating [Mother's] parental rights under 23 Pa. C.S. § 2511(a) and (b), where the Department of Human Services of the City of Philadelphia (DHS) failed to prove by clear and convincing evidence that involuntary [sic] terminating [Mother's] parental rights would best serve the emotional needs and welfare of [A.H.[4]].

3. The trial court committed an error of law and abuse of discretion by changing the permanency goal from reunification to adoption where the Department of Human Services of the City of Philadelphia failed to provide sufficient evidence that such a goal change would be best suited for [A.H.]'s needs and welfare.

Mother's Brief at unnumbered 5.

We review Mother's first two issues according to the following standard:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest

---

[4] Although Mother included a challenge to the termination of her parental rights to R.C. in her Pa.R.A.P. 1925(a)(2) statement, she did not raise that issue in her appellate brief. Concise Statement of Errors Complained of on Appeal, 1/31/19, at ¶ 2; Mother's Brief at unnumbered 5. "Issues not presented in the statement of questions involved are generally deemed waived." *Werner v. Werner*, 149 A.3d 338, 341 (Pa. Super. 2016). However, "such a defect may be overlooked where [an] appellant's brief suggests the specific issue to be reviewed and appellant's failure does not impede our ability to address the merits of the issue." *Id.* We presume that Mother intended to challenge the termination of her parental rights to A.H. **and** R.C. Therefore, we decline to find waiver.

unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101–2938, governs termination of parental rights and requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Instantly, we conclude that the certified record supports the termination orders pursuant to Section 2511(a)(2) and (b), which provide as follows:

(a) General Rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity,

- 6 -

abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

**(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b); *see also In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*) (stating that we must agree with the trial court only as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm).

Pursuant to 23 Pa.C.S. § 2511(a)(2), parents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.*, 797 A.2d 326, 340 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* Further, the grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *Id.* at 337.

With respect to Section 2511(b), this Court has explained, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). Furthermore, the trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.* (citation omitted). However, this Court has stated, "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 763–764 (Pa. Super. 2008) (citation omitted).

Mother's complete argument against termination of her parental rights under Section 2511(a)(2) and (b) consists of the following statements:

> Mother remedied the conditions and causes of the incapacity. Mother testified that due to an inability to reach her social worker, Mr. Williams, she had been incapable of updating him on her progress. [N.T., 1/11/19, at 47]. She had acquired two jobs, one as a dish washer and one at a daycare. [**Id.** at 48]. Mother testified that she was regularly drug tested through her employment and that her screens came up negative. [**Id.**] Mother testified that she had continued at her drug treatment program. [**Id.**] Mother also testified that she had housing. [**Id.** at 47]. Therefore, Mother had remedied the problems that brought her daughters into care.
>
> * * *
>
> DHS did not prove by clear and convincing evidence that severance of the parent child bond would cause no lasting irreparable harm to the [C]hildren.

Mother's Brief at unnumbered 9, 10.

The trial court disposed of Mother's termination challenge as follows:

The documents and testimony presented at the Termination Hearing provided the trial court clear and convincing evidence to terminate Mother's parental rights. The trial court also found that the termination of these rights would be in the best interests of [the] Children pursuant to 23 Pa. C.S.A. §§ 2511(a)(1)(2)(5) and (8) . . . . The testimony of the CUA worker, Mr. Williams, was deemed to be credible and accorded great weight. The court found that Mother was unable to control her drug addiction, did not complete parenting [classes] and did not consistently visit the Children nor did she complete other SCP objectives. In addition, the [c]ourt determined that the termination of [Mother's] parental rights was in the best interests of the Children pursuant to 23 Pa.C.S.A. § 2511(b). The court found that the Children's daily physical and emotional needs were addressed by the Children's foster parents, who provided the Children a safe and caring environment. . . . [T]ermination of Mother's parental rights would not have a detrimental effect on the Children and was in the Children's best interest.

Trial Court Opinion, 3/12/19, at 7–8 (footnotes omitted).

Upon review, we discern no abuse of the trial court's discretion in terminating Mother's parental rights to the Children. Although Mother informed the trial court about what she has done to comply with the SCP objectives, she offered no evidence to support her self-serving testimony or explanation for her failure to inform DHS or CUA of her progress. In contrast, CUA caseworker Gregory Williams provided a complete description of Mother's situation. DHS and CUA had already been involved with Mother, as she tested positive for drugs at the birth of her older child, M.H.-B, in 2010. N.T., 1/11/19, at DHS Exhibit 5. Mother did not have any of her four children in her care. *Id.* at 16–19. R.C. and A.H. were placed in the same pre-adoptive

- 9 -

medical foster care directly from the hospital and have remained there. *Id.* at 16, 18–19, 31–33, 39. Mr. Williams personally discussed Mother's SCP objectives with her, provided her copies of the SCP, ensured that she had his contact information, and offered to help her locate a mental health provider. *Id.* at 36–38.

Mother failed to comply with her substance abuse or mental health objectives. She did not successfully complete court-ordered random drug testing, dual diagnosis assessment, and mental health and substance abuse treatment. N.T., 1/11/19, at 25–27. Mother admitted to her reliance on marijuana; she enjoyed marijuana and did not think that its use should be illegal. *Id.* at 37.[5] Although Mother enrolled in outpatient substance abuse treatment at Chances in 2017, she never completed the program. *Id.* at 26–27. Mother also admitted to experiencing depression and anxiety, but she did not enroll in treatment to address these issues. *Id.* at 38. Mother did not provide any program or contact information to confirm her compliance with a dual diagnosis service. *Id.* at 27–28. CUA referred Mother to ARC on three occasions for parenting, employment, and housing. *Id.* at 28. Mother completed two intake sessions and attended two parenting classes, but she

---

[5] Mother stipulated that she tested positive for cannabis on November 9, 2017, December 6, 2017, January 26, 2018, and April 20, 2018; she tested positive for marijuana on July 7, 2015, June 22, 2016, and April 23, 2018; and she was a no show/no call for various assessments on August 5, 2015, July 11, 2016, January 2, 2018, January 9, 2018, January 29, 2018, February 2, 2018, and May 10, 2018. N.T., 1/11/19, at 30–31, DHS Exhibits 6–11.

did not successfully complete any ARC programs. *Id.* at 28–29. ARC discharged Mother for non-compliance on July 20, 2017, and February 10, 2018. *Id.* at DHS Exhibits 12–14.

As for housing, Mother moved from a relative's house to a shelter for six months in 2018; by August 2018, she had left the shelter. N.T., 1/11/19, at 32–35. As of the termination/goal-change hearing, Mr. Williams did not know where Mother was living or if she had appropriate housing. *Id.* at 38–39.

CUA offered Mother weekly supervised visitation with the Children. N.T., 1/11/19, at 20. She confirmed six visits and attended three with R.C. in two years. *Id.* at 20–21, 24. She visited with A.H. twice in one year. *Id.* at 22. Mother's reasons for not visiting with the Children included being busy, trying to work, oversleeping, and simply missing appointments. *Id.* at 25. When she did visit, the Children did not know who she was. *Id.* at 22. They cried, and Mother tried her best to console them. *Id.* at 22–23. Mother's last visit with the Children was on December 27, 2017, more than one year before the termination/goal-change hearing. *Id.* at 39.

The Children are in the same pre-adoptive medical foster home and enjoy a loving relationship with the foster parents. N.T., 1/11/19, at 39–40. R.C. refers to the foster parents as "mom and dad or mommy," and A.H. looks to the foster parents as "parental figures." *Id.* at 10, 40. The foster parents—not Mother—are performing all necessary parental duties required to meet the

Children's needs. *Id.* at 11, 40–44. The Children are thriving in the care of the foster parents who meet all of their medical and daily needs. *Id.* at 43, 44.[6] Terminating Mother's parental rights would not cause irreparable harm to the Children because they do not have a bond with Mother. *Id.* at 41, 44.

Mr. Williams' testimony supports the trial court's conclusion that DHS presented clear and convincing evidence that Mother's rights should be terminated pursuant to 23 Pa.C.S. § 2511(a)(2). Mother's repeated and continued illegal drug use and her mental health issues caused the Children to be without essential parental care, control, and subsistence necessary for their physical or mental well-being since birth. Furthermore, the causes of the incapacity, neglect, and refusal cannot or will not be remedied. 23 Pa.C.S. § 2511(a)(2); *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003).

Mr. Williams' testimony also supports the trial court's determination that termination of Mother's parental rights best served the Children's developmental, physical, and emotional needs and welfare pursuant to 25 Pa.C.S. § 2511(b). Mother essentially abandoned the Children at birth. There is no evidence of a parent-child bond between Mother and the Children. In

---

[6] The Children's legal counsel informed the trial court that she had visited the foster home in December 2018, saw the Children interact with the foster parents, and concluded "the home is an appropriate home for the [C]hildren. It is in the best interest of the [C]hildren to continue living in that home." N.T., 1/11/19, at 51–52.

contrast, the foster parents have filled the parental role since they received each child directly from the hospital. Thus, we affirm the orders terminating Mother's parental rights to the Children.

In her third issue, Mother challenges the goal change for A.H. from reunification to adoption with a two-sentence argument:

> A Court must make a child's best interest the focus in this determination. DHS did not prove by clear and convincing evidence that . . . A.H.'s best interest would not be served by reunification.

Mother's Brief at unnumbered 10.

> When presented with a goal change petition, the trial court:
>
> considers the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by which the goal for the child might be achieved.

*In Interest of A.N.P.*, 155 A.3d 55, 67 (Pa. Super. 2017) (quoting *In re A.K.*, 936 A.2d 528, 533 (Pa. Super. 2007)). Additionally, in a change of goal proceeding, the best interests of the children, and not the interests of the parent, must guide the trial court; the parent's rights are secondary. *In re M.T.*, 101 A.3d 1163, 1173 (Pa. Super. 2014). "The burden is on the Agency to prove the change in goal would be in the child's best interests." *Id.* (citation omitted). This Court has stated:

> The focus of all dependency proceedings, including change of goal proceedings, must be on the safety, permanency, and well-being of the child. The best interests of the child take precedence over

- 13 -

all other considerations, including the conduct and the rights of the parent.... While parental progress toward completion of a permanency plan is an important factor, it is not to be elevated to determinative status, to the exclusion of all other factors.

***Id.*** (citation omitted). We review goal-change decisions for an abuse of discretion. ***In Interest of R.W.***, 169 A.3d 129, 134 (Pa. Super. 2017).

We note that the trial court did not include a goal-change analysis in its Pa.R.A.P. 1925(a) opinion. Nevertheless, our careful review of the certified record leads to the conclusion that a goal change to adoption was appropriate for A.H. Mother abandoned A.H. at birth, engaged in only two visits with A.H., and failed to complete her SCP objectives for reunification. A.H. entered foster care directly from the hospital; she is bonded with her foster parents and receiving her daily physical, developmental, emotional needs from them. As this Court has explained, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." ***In re Adoption of R.J.S.***, 901 A.2d 502, 513 (Pa. Super. 2006). Accordingly, we discern no abuse of the trial court's discretion in concluding that a change in A.H.'s permanency goal to adoption is in the best interest of A.H.

Appeal at 386 EDA 2019 quashed. Orders terminating Mother's parental rights to R.C. and A.H. affirmed. Order changing A.H.'s permanency goal to adoption affirmed.

- 14 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>7/16/19</u>